71 Conn. JANUARY, 1899. 381

Norwalk, etc., Elec. L. Co. v. Common Council.

THE NORWALK AND SOUTH NORWALK ELECTRIC LIGHT
COMPANY *vs.* THE COMMON COUNCIL OF THE CITY OF
SOUTH NORWALK.

Third Judicial District, Bridgeport, Oct. Term, 1898. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Section 3945 of the General Statutes declares that no electric wires or
fixtures shall be erected on or over any highway, without the con-
sent of the adjoining proprietors or of two of the county commis-
sioners; and § 3946 provides that the common council of any city
shall, subject to the provisions of § 3945, have full direction and
control over the location and erection of such wires and fixtures in
the city, with the right to make all orders necessary to the exercise
of such control. *Held* that the consent of the adjoining proprietors
was not a condition precedent to the exercise of the power of con-
trol vested in the common council.
Whether § 3946 imperatively demands action by the municipal author-
ities upon the request of an electric company, or simply confers a
power to be exercised at their discretion, *quære.*
Where the act enjoined by mandamus can only be performed by a board
or public body convened according to law, the better practice is to
direct the writ to the body by its legal designation, rather than to
its individual members. Service of the peremptory writ, however,
must be made upon the persons who at the date of its issue compose
the body, in order to lay the foundation for punishment in case the
command is disobeyed.
A change in the membership of the common council of a city after an
alternative writ of mandamus has been directed to it and to its in-
dividual members by name, furnishes no reason why the peremptory
writ should not issue directly against the common council, as such,
since its existence as a public board is continuous and perpetual.

Argued November 2d, 1898—decided January 4th, 1899.

APPLICATION for a writ of mandamus requiring the defend-
ant to take action upon the plaintiff's petition for an order
authorizing the repair and improvement of its electric plant
in certain streets, brought to the Superior Court in Fairfield
County and tried to the court upon the defendant's motion to
quash the alternative writ; the court, *Thayer, J.,* overruled
the motion to quash, sustained (*Robinson, J.*) the plaintiff's

demurrer to the defendant's return, and rendered judgment for the plaintiff, and the defendant appealed for alleged errors in the rulings of the court. *No error.*

The alternative writ was as follows : —

" SUPERIOR COURT, } November 5th, 1897.
" FAIRFIELD COUNTY. }

" To Stephen S. Hatch, George S. Kendall, George S. Trowbridge, Venanico A. Scofield, Charles N. Smith and William W. Comstock, councilmen of the city of South Norwalk, and Charles G. Bohannan, mayor of said city of South Norwalk, the common council of the city of South Norwalk : Whereas it has been made to appear—

" 1. That the city of South Norwalk is a municipal corporation in the town of Norwalk, incorporated as a city under a charter granted by the legislature of this State, and that under said charter ' The Council' is the common council of said city, and that the following named persons, to wit: Stephen S. Hatch, George S. Kendall, George S. Trowbridge, Venancio A. Scofield, Charles N. Smith and William W. Comstock, now are councilmen, and Charles G. Bohannan is the mayor of said city, and has a right to preside and to vote in case of a tie, at the meetings of the said board of council, and that Joseph R. Taylor is now the clerk of said Board.

" 2. That the Norwalk & South Norwalk Electric Light Company, is a corporation organized and existing under and by virtue of the laws of the State of Connecticut, is located in said town of Norwalk, and is exercising the powers conferred upon it by charter granted by the General Assembly of this State, beginning Wednesday after the first Monday of January, A. D. 1887, duly approved by the Governor of said State, April 20th, 1887, and duly accepted by the said company in 1887.

" 3. That by said charter the Norwalk & South Norwalk Electric Light Company is authorized and empowered to generate, manufacture and sell electricity for the purposes of light and power, and for any other purposes within the town of Norwalk, and the city of South Norwalk in said town, and

may light any public or private buildings or grounds, streets, avenues, lanes, parks, alleys and squares, within said territory, by means of electricity conducted by wires, over or under the surface of the ground, and through, over, along and across the streets and public grounds of said town and city; and that said corporation is authorized to erect and construct such wires, poles, posts, fixtures and other works or structures, suspend wires, lay conduits for electric wires under the ground, and to change and alter the same as occasion may require; to maintain all electrical apparatus necessary and convenient to carry on the business of said corporation, and to have power to do all things necessary to the proper management of said business.

" 4. That pursuant to said authority the Norwalk & South Norwalk Electric Light Company has erected, constructed and now maintains at a great expense, a plant in said town of Norwalk, to generate and manufacture electricity, and has erected and constructed poles, posts, fixtures, other works, structures and apparatus, and suspended and laid wires to conduct and deliver electricity for light, power and any other purposes throughout portions of the town of Norwalk, and the said city of South Norwalk, and has been since its organization and equipment, and still is engaged in the manufacture, sale and delivery of electricity for the purposes of light, power and other purposes, to a large number of people in the city of South Norwalk desiring the same, through and by means of said wires, poles, posts, fixtures, works, structures and apparatus.

" 5. That a part of said wires, poles, posts, fixtures, structures and apparatus, are situated on Washington street and on Main street, and on Railroad place in the city of South Norwalk, and that the same are public streets and places in the said city.

" 6. That by reason of the use and wear of said wires, poles, posts, fixtures, structures and apparatus so used and the increased use of electricity for said purposes, and the numerous improvements in the means and methods of economical distribution and delivery of electricity, and the proper exercise

of the powers granted by said charter, it became and is necessary that said corporation should repair, improve, renew, change and alter the said system of wires, fixtures, structures and apparatus, at various places within said city, to wit: certain wires, fixtures, structures and apparatus located upon Washington street, Main street and Railroad place in said city, as asked for in the application hereinafter referred to.

"7. That on the first day of February, 1897, said corporation duly submitted to the said council of said city of South Norwalk, a statement of such changes and alterations as it desired to make in said Washington street, Main street and Railroad place, and asked for an order relative to its direction and control of such work and materials as provided by law, and according to the General Statutes of the State, which application was as follows:—

" ' To the City Council of the City of South Norwalk:

" ' The application of the Norwalk & South Norwalk Electric Light Company respectfully represents: That by its charter it has a right to maintain wires, fixtures, poles and other apparatus in Washington street, Main street and Railroad place, in the city of South Norwalk; that it has now upon said streets, its wires, conductors, fixtures, poles and other apparatus, for the purpose of conveying and distributing electricity for the purpose of lighting; that it desires to repair and improve its present wires, conductors and transformers on said streets, made necessary by the condition of the present wires, conductors and transformers, for the purpose of furnishing lights to its customers. Said repairs to consist of taking out a large number of transformers, and putting in their place four large transformers of three hundred lights capacity each, and three number o wires, all to be attached to the present poles of the company. They therefore pray for such an order as your council shall see fit relative to such direction and control over said work as is contemplated and provided by § 3946 of the General Statutes of this State.

" ' Dated at Norwalk, this 1st day of February, A. D. 1897.

" ' Respectfully, (Signed) Norwalk & So. Norwalk Elec. Light Co., by W. E. Guthrie, Supt.'

"8. That said corporation has repeatedly requested said common council to act upon said application.

"9. That said common council has duly met and transacted business once each month since said February 1st, 1897, and at all times has refused and still refuses to act upon said application.

"10. That the said city and the officers and authorities of said city have forbidden and prevented said corporation to make, and from making any of said necessary changes, alterations or repairs, to wit: the taking out of a large number of transformers, and putting in their place four large transformers of three hundred lights capacity each, and three number o wires, to be attached to the present poles of the company, and that it was at the date of said application and still is necessary that said council should exercise the powers conferred by law on said body relative to the direction and control over the placing, erection and maintenance of any such wires, conductors, fixtures, construction or apparatus, including the relocating or removal of the same, and including the power of designating the kind, quality and finish thereof.

"11. That by reason of said refusal and neglect of the said common council of the city of South Norwalk, the Norwalk & South Norwalk Electric Light Company is occasioned and put to great loss and damage, and is prevented from fully discharging its charter, and from doing the necessary acts and things referred to in said application.

"12. That this applicant has no other remedy at law.

"Therefore, that due and speedy justice may be done in the behalf of said The Norwalk & South Norwalk Electric Light Company, it is required and enjoined of you, the said Stephen S. Hatch, George S. Kendall, George S. Trowbridge, Venancio A. Scofield, Charles N. Smith and William W. Comstock, councilmen of the city of South Norwalk, and Charles G. Bohannan, mayor of the city of South Norwalk, the common council of the city of South Norwalk, that on or before the 15th day of November, 1897, that you take action on and make some order on the application of the Norwalk and South Norwalk Electric Light Company, pre-

sented to your board on the first day of February, 1897, or signify cause of the delay thereof to this court, to be held at Bridgeport, within and for the county of Fairfield, at 10 o'clock in the forenoon, on the 16th day of November, A. D. 1897."

The motion to quash stated the following grounds :—

"1. Section 3945 of the General Statutes provides that the relator shall not exercise any powers which may have been conferred upon it to erect or place wires, conductors, fixtures, structures, or apparatus of any kind over, on or under any highway or public ground, or to change the location of the same, without the consent of the adjoining proprietors, or, in case such consent cannot be obtained, without the consent in writing of two county commissioners in the county in which it is desired to exercise such powers, which shall be given only after a hearing upon due notice, to such proprietors. 2. It does not appear from the facts alleged in the alternative writ and in the application therefor, that the relator has ever obtained the consent of the adjoining proprietors or the county commissioners, as required by law, to erect or place the poles, wires, conductors, fixtures, structures, or apparatus of any kind, which they claim to have erected in the streets of the city of South Norwalk. 3. It does not appear from the facts alleged in the alternative writ and the application therefor, that the relator has ever obtained the consent of the adjoining proprietors or the county commissioners, as required by law, to erect or place the wires, conductors, fixtures, structures, and apparatus described in their petition to the common council, in Washington street, Main street and Railroad place, in the city of South Norwalk. 4. Section 3946 of the General Statutes provides that the common council shall exercise the power given it therein, subject to the provisions of § 3945 of the General Statutes, referred to in paragraph 1. 5. The facts alleged show that the relator has no legal right to exercise any of its charter powers in Washington street, Main street and Railroad place in the city of South Norwalk, because it has not obtained the consent of the adjoining proprietors or the county commissioners, as required by law. 6. The

facts alleged show that the respondents are not legally required to act upon the application of the relator, until the relator first obtains the consent of the adjoining proprietors or the county commissioners, as required by law, nor have they the power to do so." This motion was overruled.

The return alleged the matters stated in the motion to quash, and further alleged:

" Said relator does not own or control any of the poles situated in said Washington street, Main street and Railroad place, heretofore used by it, and on which it seeks permission to place new transformers and new wires.

" The changes sought to be made by the relator and which are but hinted at in their petition to the respondent, are not in any sense in the nature of repairs. It proposes to displace the present system of lighting, which is known as a simple or single-phase alternating current, by a new system known by a number of different names, one of which is the multi-phase current, which requires three wires where the old required but two, and the wires must be of much larger size than the old ; and the transformers which they seek to put in are very large and heavy, each weighing about 700 pounds.

" The poles heretofore used by the relators belong to the Postal Telegraph Company, which company has no right to permit the relator to use its poles.

" The petition set forth in paragraph 7 of the alternative writ was presented to the mayor and councilmen of the city, as set forth in said paragraph, but since said time, to wit, on the first Monday of January, 1898, the respective terms of office of said mayor and councilmen expired, and the new mayor and councilmen elected on the first Monday of October, 1897, succeeded to the offices of mayor and councilmen, and organized a new board. No petition has ever been presented to the new board by the relator, and no opportunity has been given them to act upon the same. The members of the new board are as follows: Charles G. Bohannan, mayor; Stephen S. Hatch, Venancio A. Scofield, Charles F. Boutwell, Charles N. Smith, Jesse M. Ferris and Henry P. Morgan, councilmen.

" All petitions and communications presented to the board of councilmen of 1897, which had not been acted upon by them on or before the first Monday of January, 1898, cannot be considered by the new board.

" Charles G. Bohannan, mayor and presiding officer of the council of 1897, never had any opportunity to act upon the petition of the relator, set forth in paragraph 7 of the alternative writ.

" George S. Kendall, George S. Trowbridge and William W. Comstock, named as councilmen in said alternative writ, were not re-elected and are not members of the board of councilmen of 1898."

The relator demurred in due form to this return ; the court sustained the demurrer, and rendered judgment for a peremptory writ of mandamus.   From this judgment the respondent appealed, specifically assigning as error, the rulings of the court involved in overruling the motion to quash and in sustaining the demurrer to the return.

*John H. Light,* for the appellant (defendant).

*Henry Stoddard* and *J. Belden Hurlbutt,* for the appellee (plaintiff).

HAMERSLEY, J.   The power and the duty of the common council is confined to making orders necessary to the exercise of its direction and control over the placing, erection and maintenance of electric wires and fixtures in the city streets. Such orders may be general or specific, applicable to existing or to future conditions, relating to one corporation or to all persons.   The council is not concerned with the rights of adjoining proprietors ; if the law requires it to exercise its power of direction upon request of the electric light company, that duty is imperative, without reference to the terms the company has made or may make with adjoining proprietors. *Castle* v. *Lawlor,* 47 Conn. 340, 346.   The motion to quash the alternative writ was therefore properly overruled.

The respondent sets up the same insufficient defense in its

return.    The return also alleges that the relator does not own the poles it uses and intends to use, and that it proposes to displace its present system of lighting by a different one. These matters possibly may affect the scope of any orders the council may find it necessary to make, but certainly cannot affect the duty to make them.

The return further alleges that pending this proceeding a city election has taken place, that the council to whom the alternative writ was addressed has ceased to exist, and that the new council has never refused to perform its duty, since no formal request has been made to it.    The alternative writ was directed to the council, and was also directed to the individual members of the council by name and was served upon each; the council appeared and answered, and the individual members also appeared.    It is no defense to the allegations of the alternative writ, that after this the composition of the council was changed; and such change furnishes no reason why a peremptory writ should not issue against the council, with directions for service on those persons who appear by the return to be members of the council at the time the peremptory writ issues.

The charter vests in the council all legislative power delegated to the city, and makes it for the most important purposes the representative of the municipal corporation.    The council cannot sue and be sued as a corporation, but it has the same continuous and perpetual existence as the city. Its members remain in office until their successors are chosen and qualified.    The mayor is always its presiding officer, the city clerk is always its recording officer.    Its existence as a public board, with capacity to exercise the powers and perform the duties conferred and imposed upon it by law, is continuous and perpetual.    Such a board must be subject, as a board, to the commands of the State.    The prerogative writ of mandamus may run directly to the board; the individual members are dealt with as in the case of a corporation, for the purposes of punishment, if the command is disobeyed. It is a matter of practice and not of substance, when an act is commanded which can only be performed by a board as a

public body, whether the alternative writ should be directed
to the board directly or indirectly by naming all the members
of the board, or to the board and the individuals composing
it.   When there is no controlling statute or rule of practice,
the form of direction has been held immaterial.   It is the
better practice for the writ to run directly to the board.
*People* v. *Champion*, 16 Johns. 61, 65 ; *People* v. *Collins*, 19
Wend. 56, 68; *Glencoe* v. *People*, 78 Ill. 382 ; *Sheaff* v.
*People*, 87 id. 189, 195 ; *People* v. *Getzendaner*, 137 id. 234,
263 ;  *Wren* v. *Indianapolis*, 96 Ind. 206, 213, 215 ; *St. Louis
County Court* v. *Sparks*, 10 Mo. 118, 120 ; *State* v. *Madison*,
15 Wis. 30, 37 ; *State* v. *Milwaukee*, 25 id. 122, 135 ; *State* v.
*Wright*, 10 Nev. 167 ; *Commissioners* v. *Sellew*, 99 U. S. 624,
625 ;  *Thompson* v. *U. S.*, 103 id. 480, 483 ; *Parker, Petitioner*,
131 id. 221, 226.   And it has been held that where a duty is to
be performed by a number of officials having a single duty,
although it may not be in the nature of a corporate act, the
alternative writ may be directed to them by their official
name without stating their individual names.   *Boody* v. *Wat-
son*, 64 N. H. 162, 192 ; *Brown* v. *Rahway*, 53 N. J. L. 156,
158.

   The prerogative writ of mandamus is the direct interven-
tion of the State to compel a person, natural or artificial, on
whom the law imposes a public duty, to perform that duty.
*Fuller* v. *Plainfield Acad. School*, 6 Conn. 532, 547 ; *Farrell*
v. *King*, 41 id. 448, 453.   If the duty is imposed on an indi-
vidual holding a public office and can only be performed by
the individual, the writ runs against that individual and will
not run against his successor in office ; but if the duty is a
continuous one attached to the office, the writ will run to
whoever holds that office.   If the duty must be performed by
several persons holding different offices, the writ runs to each
and all.   If the duty is a single duty which must be per-
formed by a number of persons holding the same office, the
writ may run to them by their official name or by their indi-
vidual names.   If the duty must be performed by a corpora-
tion or a *quasi* corporation, the writ runs to the corporation.
If the duty must be performed by a public body the members

of which cannot act individually, but can only act by vote when assembled in regular meeting in accordance with the law constituting them such public body, the writ runs to the public body by its corporate name. In other words, the determination of the person whose specific duty it is to perform the act commanded, determines the person to whom the writ must run. The alternative writ and the peremptory writ must run to the same person. But there is this distinction. The function of an alternative writ is to elicit an answer showing cause why a peremptory writ should not issue. When, therefore, it is directed to a corporation, or to a public body not formally incorporated but which is under legal obligation to perform duties similar to those imposed upon corporations and which must be performed in a similar manner, there is no need of naming the persons who represent the corporate body or compose the public body; service, however, must be made on each individual or on the presiding or other officer, according to the rules of practice. But the function of the peremptory writ is to command immediate performance of a specific act and to lay the foundation for the punishment of disobedience. It is, therefore, essential that the writ should be served on the individuals who may be punished if the command is not obeyed. This distinction between the alternative and peremptory writ is indicated in an opinion of JUSTICE BRADLEY in *Hitchcock* v. *Galveston*, 4 Woods, 308, 309, and underlies the whole law of mandamus.

This respondent is a public body; none of its powers can be exercised by its members acting individually, but all must be exercised by its members convened according to law as a public body. When the State creates such a body and imposes upon it duties which cannot be performed by an individual or any number of individuals, but only by that body, it necessarily authorizes its writ of mandamus to run to the public body by its legal designation.

The allegations in the return of changes in the membership of the council were, therefore, immaterial, and could not prevent the issue of a peremptory writ directed to the council, as the alternative writ had substantially been directed.

*State's Atty.* v. *Branford,* 59 Conn. 409. The demurrer to the return was properly sustained.

These are the only errors assigned in the appeal; and it is unnecessary to consider any possible errors of form which have not been assigned. There may be a question whether the statute under which this proceeding is brought, imposes on the council an imperative duty to make orders relative to the placing and erection of the structures in question, or simply confers a power of control and direction to be exercised or not, at discretion. But inasmuch as this question was not raised below nor stated in the reasons of appeal, and as the respondent admits its duty to act if the reasons it has assigned for not acting are insufficient, and as it clearly appears to be for the interest of the respondent as well as for the relator that the respondent should act at once, we do not consider this question.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.