SWIFT, Appellant, v. CITY OF ST. LOUIS et al.

In Banc, February 24, 1904.

1. **STREET PAVING: Article of Certain Brand: Competitive Bidding.** The city authorities were desirous of using bituminous macadam, which had an advantage over asphalt pavement in that horses were not liable to slip and fall on it, and was sufficiently strong, owing to the rock in its composition, to carry great weight, and coal tar cement, which was the binding material which must enter into its composition, was impervious to water, and hence it would make an enduring pavement, but they were advised that the only proper and reliable binding cement for the macadam known at that time was a cement of a certain brand, and accordingly they required that cement in the specifications. *Held*, that they did not thereby so prevent competitive bidding as to make the contract for the paving in conflict with the city's charter which required the contract to be let to the lowest bidder, although only one firm manufactured that brand of cement.

2. ———: ———: ———: **Fixing Standard.** And where only one company manufactures cement of the standard required, it is not necessary, in order to comply with the city's charter requiring the work to be let to the lowest bidder, to specify that the cement used is to be equal to that company's brand. That would, however, be necessary if more than one firm manufactured a uniform cement of the quality required.

3. ———: ———: **Notice: Filed With Board.** The published notice to the property owners to consider the improvement, is a substantial compliance with the charter in regard to the material to be used, if it refers to the specifications on file in the office of the proper board.

4. ———: **Ordinance.** An ordinance for street improvements is not void because it leaves certain details of construction to the discretion of the proper city officials.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Judson & Green* and *Grover & Grover* for appellant.

(1) The charter of the city of St. Louis guarantees competition in the work of reconstructing streets, by declaring that such work shall be let to the lowest responsible bidder. Charter, art. 6, sec. 27. (2) This requirement of competition is not a mere regulation, as declared by the circuit judge in his opinion, but is a limitation of power and based upon the gravest considerations of public policy to prevent corruption and favoritism. The "mode of exercise is the measure of the power." St. Louis v. Clemens, 43 Mo. 395; McQuiddy v. Brannock, 70 Mo. App. 535; Shoenberg v. Field, 95 Mo. App. 241; 1 Dillon on Municipal Corporations (4 Ed.), secs. 466-467; Fishburn v. Chicago, 171 Ill. 338; Ruggles v. Collier, 43 Mo. 353; Neill v. Gates, 152 Mo. 585. (3) This case involves neither a governmental monopoly, as in Barber Asphalt Co. v. Hunt, 100 Mo. 22, nor a natural monopoly, as in the Verdin case, 131 Mo. 28. But the principle decided in those cases is attempted to be extended to the selection of an unpatented manufacture of a well-known commodity by the designation of a brand of a single manufacturer, to the exclusion of the same material manufactured by other

manufacturers. This can not be done. This is not the injudicious exercise of a given power, but an illegal assumption of power to be checked by the court. Hooper v. Ely, 46 Mo. 508; Shoenberg v. Field, 60 S. W. 945; Larned v. Syracuse, 44 N. Y. Supp. 857; Smith v. Syracuse, 161 N. Y. 484; Fishburn v. Chicago, 171 Ill. 338; 1 Smith's Modern Law of Municipal Corporations, sec. 746; Tucker v. Newark, 19 O. Cir. Ct. 1. (4) It is immaterial that the members of the board may have believed that a better or more uniform quality of coal tar could be obtained from the Warrens. The very purpose of the charter requirement was to prevent the exercise of such discretion. It was to prevent the abuse that the charter prohibited the use of this discretion in the preference of one manufacturer over others. (5) The charter of St. Louis, article 6, section 14, requires that the published notice to the property owners must state "the kind of material and the manner of construction proposed to be used." The notice sustained in the Verdin case, 131 Mo. 81, was under the charter before its amendment in October, 1901. The charter then required simply a notice of the "time, place and object of the meeting." The very purpose of the amendment of 1901, possibly induced by the decision in the Verdin case, was to require the publication in the notice of both the kind of material, and of the manner of construction. Clearly the term "bituminous macadam" did not inform the taxpayer that competition was to be shut out by the designation of Warren's brands as the bituminous binding material. (6) The ordinance was fatally defective under the said charter provisions in failing to specify the material to be used, and the manner and general regulations, so that contractors could bid thereon; and was also fatally defective in the unlawful delegation of powers to the street commissioner. California Improvement Co. v. Reynolds, 123 Cal. 88; Holton v. Gilleran, 105 Cal. 244; Bradford v. Pontiac, 165 Ill. 612; Dillon on Municipal

Corporations, sec. 96; McConnel v. Bristol, 89 Va. 652; St. Louis v. Clemens, 43 Mo. 395; Ruggles v. Collier, 43 Mo. 353; Neill v. Gates, 152 Mo. 585; Hyde v. Joyce, 4 Bush 464; Construction Co. v. Loevy, 64 Mo. 431; Smith v. Duncan, 77 Ind. 92.

*Chas. W. Bates* for respondents; *Elliott, Elliott & Littleton* of counsel.

(1) It is "the right of a municipal body to select and have such quality of material for use in pavements as they, in the honest exercise of the discretion vested in them, may require," and "a city council will not be required by the court to speculate with uncertain material, even if it costs less, especially when it appears that from another quality of similar material they are assured of a pavement of the quality and standard desired." State (Ryan) v. Mayor (N. J.), 49 Atl. 587; Field v. Barber, etc., Co., 117 Fed. 929; Verdin v. St. Louis, 131 Mo. 26. (2) A patented pavement or process or one which is in a sense a monopoly because of its inherent nature or because it is controlled by one party may be used notwithstanding a provision of the charter for competitive bidding. Barber Asphalt Pav. Co. v. Hunt, 100 Mo. 22; Warren v. Barber, etc., Co., 115 Mo. 572; Verdin v. City of St. Louis, supra; Rhodes v. Board (Colo.), 49 Pac. 430; Holmes v. Common Council (Mich.), 79 N. W. 200; Hobart v. Detroit, 17 Mich. 246; Mayor v. Bonnell (N. J.), 31 Atl. 408; State (Ryan) v. Mayor (N. J.), supra; Silsby, etc., Co. v. City of Allentown (Pa.), 26 Atl. 646; Baltimore v. Raymo (Md.), 13 Atl. 383; Field v. Barber, etc., Co., supra. (3) If, as testified by Mr. Warren and others, the Warren's Puritan brand was "a material upon the market" and could be obtained by licensees or others, the fact that it was specified would not be a violation of the provision for competitive bidding, and the presumption is that it could be so obtained. Rhodes v. Board (Colo.), supra;

Hobart v. City of Detroit, supra; Kilvington v. City of Superior (Wis.), 53 N. W. 487. (4) The petition averred that neither the pavement nor the Puritan brands were patented, but the patents in evidence show that the pavement itself was patented, and the evidence further shows that it was the only practicable bituminous macadam pavement used, or at least the only one used or made since the patents were obtained, and that Warren coined the term "bituminous macadam," which was applied only to his patented pavement. This being true, the petitioner has failed to make out his case; and the patentee had a right, if he chose, in order to protect his patent, to impose terms and conditions upon which it should be used and prescribe what materials should be used. E. Bennett & Sons v. National Harrow Co. (U. S.), 22 Sup. Ct. Rep. 747. (5) The notice was sufficient and fully complied with the statute. Galbreath v. Newton, 30 Mo. App. 380; Roth v. Haas, 68 Mo. App. 283; Verdin v. City of St. Louis, supra; Hackworth v. Louisville, etc., Co., 50 S. W. 33. (6) The specifications which were on file before the time fixed for the hearing, and, indeed, before the notice was given, provided that Warren's Puritan brands should be used for the bituminous macadam pavement, and this was sufficient in aid of the published notice to charge all persons interested with notice and to comply with the statute. Barber, etc., Co. v. Ullman, 137 Mo. 543; Becker v. Washington, 94 Mo. 375, 7 S. W. 291; Clinton v. Portland, 38 Pac. 407; Arnold v. Ft. Dodge, 82 N. W. 495; Lewis v. Albertson, 23 Ind. App. 161; Elliott on Roads and Streets (2 Ed.), sec. 520; Gilmore v. City of Utica, 131 N. Y. 26. (7) The objection to the ordinance that it is invalid because it does not specifically designate the kind of stone is untenable, and so are similar objections that the ordinance and notice do not sufficiently designate the material and improvement. Sheehan v. Gleason, 46 Mo. 105; Gallagher v. Smith, 55 Mo. App. 116; City of Connersville v. Mevill, 14 Ind. App. 303; Verdin

v. City of St. Louis, supra; Taber v. Graffmiler, 109 Ind. 206; Martindale v. Palmer, 52 Ind. 411; Richardson v. Mehler, 63 S. W. 957; Home v. Mehler, 64 S. W. 918; Lambert v. Marcus, 69 Pac. 620; Olson v. Topeka, 21 Pac. 219. (8) It is true, as a general rule, that a municipal council or assembly can not delegate its legislative duties or powers, but the law does not contemplate that an improvement ordinance shall enter into minute details, and ministerial duties may always be left to ministerial officers to perform. There was no unlawful delegation of authority or duty in this case. Mayor of Baltimore v. Stewart (Md.), 48 Atl. 165; Hitchcock v. Galveston, 96 U. S. 349; Ray v. City of Jeffersonville, 90 Ind. 567; Taber v. Grafmiller, 109 Ind. 208; Gibson v. Owen, 110 Mo. 455; Moran v. Tindell, 52 Mo. 231; Bank v. Weston, 147 Mo. 483.

*Morton Jourdan* and *Virgil Conkling* also for respondents.

(1) The Warren paving preparations, specified in the ordinance, were proprietary articles manufactured by special processes and with special patented machinery. Soon thereafter the Warren paving process was patented under the name of "bituminous macadam," and this patent was pending when the St. Louis ordinance was adopted. The Warren cements were, therefore, a lawful monopoly and their arbitrary selection was as distinctly lawful as the selection of the "Nicholson pavement" or "Trinidad Lake asphalt." Barber Asphalt Co. v. Hunt, 100 Mo. 22; Warren v. Barber Asphalt Co., 115 Mo. 578; Verdin v. St. Louis, 131 Mo. 26; Hobart v. Detroit, 17 Mich. 246; Motz v. Detroit, 18 Mich. 515; Atty.-Gen. v. Detroit, 26 Mich. 262; Harlem Gas. Co. v. Mayor, 33 N. Y. 309; In re Anthony Dugro, 50 N. Y. 513; Baird v. Mayor of New York, 96 N. Y. 582; Baltimore v. Raymo (Md.), 13 Atl. 383; Silsby Co. v. Allentown (Pa.), 26 Atl. 646; Mayor of Newark v.

Bonnell (N. J.), 31 Atl. 408; Rhodes v. Board (Colo.), 49 Pac. 430; Kilvington v. Superior (Wis.), 53 N. W. 487; Holmes v. Common Council (Mich.), 79 N. W. 200; Field v. Barber Asphalt Paving Co., 117 Fed. 25. (2) A statutory or charter provision, requiring the letting of contracts by competitive bidding, is not violated by confining the bids to a certain particular material, when such a material is a monopoly and can be furnished only by the person owning it. Barber Asphalt Co. v. Hunt, supra; Warren v. Barber Asphalt Co., supra; Verdin v. St. Louis, supra; People v. Flagg, 17 N. Y. 584; Harlem Co. v. Mayor, supra; In re Anthony Dugro, supra; Baird v. Mayor of New York, supra; People v. Van Nort, 65 Barb. 331; Baltimore v. Raymo, supra; Mayor of Newark v. Bonnell, supra; Rhodes v. Board, supra; Kilvington v. Superior, supra; Holmes v. Common Council, supra. (3) The arbitrary selection of a patented or proprietary article does not violate the requirement for competition where the material selected can be bought on the open market or supplied by licensees, as in this case. Hobart v. Detroit, supra; Mayor v. Bonnell, supra; Rhodes v. Board, supra; Kilvington v. Superior, supra; Holmes v. Common Council, supra.

GANTT, J.—This is an appeal from a judgment of the circuit court of the city of St. Louis, dissolving a temporary injunction which had been obtained in this cause and dismissing the bill. The suit was one in equity against the city and the board of public improvements to enjoin the said board from making a contract for the pavement of West Pine Boulevard with "bituminous macadam," under City Ordinance No. 20822. This suit is based upon the alleged invalidity of said ordinance providing for said pavement. The plaintiff asserts that the ordinance violates the charter provisions concerning the duties of the board of public improvements in recommending ordinances for street im-

provements and prescribing the legal requisites for such ordinances, in that it prevented competition for the construction of said pavement, and thereby denied the taxpayer the right to have it done by the lowest bidder.

The charter provisions are pleaded in full.    Article 6, section 14, ordains that "no ordinances for the construction or reconstruction of any street, alley or public highway of the city shall be passed unless recommended by the board of public improvements," as thereinafter provided.

The board is required to designate a day in which they will hold a public meeting to consider the improvement of any designated street, avenue, boulevard, alley or public highway by grading or regrading, by constructing or reconstructing, by paving or repaving the roadway, including cross-walks and intersections, and shall give two weeks public notice in the papers doing the city printing, of the time, place and matter to be considered, stating in each notice the kind of material and manner of construction proposed to be used for the wearing surface of such improvement, naming more than one kind of material or manner of construction if the board deem it advisable so to do and also the class of specifications and plan for such work, which specifications and plan shall be approved by the board. It then provides for a remonstrance within fifteen days by the owners of the major part of the area of the land made taxable for such improvement and requires the board to consider such remonstrance and if two-thirds of the board concur in approving such improvement, material or manner remonstrated against, they shall cause an ordinance to be prepared and report the same with such remonstrance to the assembly. If no such remonstrance be filed  within fifteen days, or such majority of  the owners shall petition for such improvement, a majority of the board may approve the same at a regular meeting and cause such ordinance to be prepared and reported to the assembly.

Section 15 provides that all ordinances so recommended shall specify the character of the work, its extent, the material to be used, the manner and general regulations under which it shall be executed, the fund out of which it shall be paid for, and may specify a term of years for which such work shall be maintained by the contractor, and shall be indorsed with an estimate of the cost thereof. Section 16 provides that upon the recommendation of any ordinance as aforesaid by the board when accompanied by a remonstrance, the assembly shall have power by a vote of two-thirds of the members elect of each house to pass such ordinance, and in all other cases a majority of the members elect may pass such ordinance. Section 17 requires all ordinances for public work to be recommended by the board of public improvements. Section 27 forbids the assembly to directly contract for public work or improvements contemplated by the charter, or to fix the price or rate therefor, but in all cases, except in cases of emergency work or necessary repairs, the board shall prepare and submit to the assembly ordinances with an estimate of cost thereof indorsed thereon, authorizing the doing of any proposed work and under the direction of such ordinances shall advertise for bids in the papers doing the city printing three times, the last publication to be at least ten days before the day appointed for the opening of the bids, stating the general nature of the work to be done and the time and place when the bids shall be received, and shall let the contract to *the lowest responsible bidder.* Any other mode of letting out or contracting for work shall be held illegal and void.

On the 28th of March, 1902, the board of public improvements considered the improvement of West Pine Boulevard from Spring Avenue to King's Highway, and passed an order fixing April 22, 1902, as the day for public hearing upon the petition of interested property holders, on the board's motion, No. 6079, for the reconstruction of West Pine Boulevard from Spring Avenue

to King's Highway, and gave notice that the board on that day would consider the reconstruction—resurfacing—of the above designated streets "with either (1) class A-3 asphalt, on a concrete base wherever required and on a Telford foundation and new granitoid curb and gutter; or (2) class R-3 natural rock asphalt, on concrete foundation and new granitoid curb and gutter; or (3) class W-3 creosoted wood blocks, on concrete foundation and new granitoid curb and gutter; or (4) class M-3 bituminous macadam on old foundation and new granitoid curb and gutter." No remonstrance was filed at said meeting nor within fifteen days thereafter by any property holders, nor within fifteen days was any one of the four suggested materials selected by the owners of a majority part of the area of the land made taxable for such improvement.

On June 3, 1902, the said board at a regular meeting selected "bituminous macadam" as the material for the reconstruction of said street, and by a resolution approved and recommended to the Municipal Assembly an ordinance for the reconstruction of West Pine Boulevard between Spring Avenue and King's Highway Boulevard, known as ordinance No. 20822, with bituminous macadam.

It appears that ninety-two property owners on this boulevard petitioned for bituminous macadam, and twenty-four for rock asphaltum. Among the specifications of material to be used in the reconstruction of the street it was required that the pavement should be of certain composition prepared by one Warren and known as "Warren's Puritan Brands," to-wit, "Warren's No. 1 Bituminous Semi-Liquid Composition, Warren's Brand," and "Warren's No. 24 Puritan Brand," and "Warren's Quick Drying Bituminous Flush Coat Composition."

Briefly stated the pavement should be laid and composed of crushed stone, that is, macadam and the bitu-

minous compositions designated above as the binding material.

"The ordinance provides for a foundation of clean crushed stone coated with a thin layer of Warren's No. 1, and on the top a heavy coating of Warren's No. 24 brand. On this foundation is laid the wearing surface or pavement proper composed of carefully selected sound hard crushed stone (granite or porphyry) ranging in size from two inches in diameter to an impalpable powder, mixed with sand and containing all sizes and grades, so that the material in the aggregate shall contain the least amount of voids. The proportion must be determined to the satisfaction of the Street Commissioner by special laboratory examination of the ingredients used."

The ordinance then provides after heating of the stone, for its separation through a rotary screen into at least four sizes, and for the mixing of these grades of stone with another Warren composition, known as Warren's Puritan Brand No. 19. The bituminous concrete thus formed is spread on the prepared foundation to a depth of two inches. Over this is spread a thin coating of another Warren composition, to-wit, Warren's Quick Drying Bituminous Flush Coat Composition, "the purpose of this coat being to thoroughly fill any unevenness or honeycomb which may be on the surface of the coarser mixture."

Fine sand is then worked or squeezed into the surface, and into the surface is then rolled the coarser sand for the purpose of presenting a gritty surface which will not be slippery. "The use of stone chips or cement for this purpose shall be determined by the Street Commissioner."

The blank form and contract and specifications for bituminous macadam proposed to be used by the board in the event of the adoption of that class of pavement were filed in the office of the Board of Public Improvements according to Mr. Varrelman, the street commis-

sioner, before the hearing by the board. In the published notices no reference was made to the Warren mixtures.

The petition alleges that the ordinance was void for the following specific reasons:

"1st. That it arbitrarily deprived the landowners of the benefit of competition, in that bituminous. macadam was not an original composition, but a well-known composition of an original material made up of broken stone and any bituminous substance used as a cement or binder. That the Warren materials specified were not patented articles, and were nothing but certain grades of coal tar branded with Warren's name, and that the specification thereof precluded competition and designated Warren and his associates as the sole bidders, and that this arbitrary specification was in violation of the rule of competition prescribed by the charter.

"2d. The ordinance did not specify all the material with which said bituminous macadam should be composed, nor did it fix the manner and general regulations under which it should be constructed, as required by the charter, but left the entire composition thereof, other than the arbitrary selection as aforesaid of the Warren mixtures, to the discretion of the street commissioner, and thus unlawfully delegated the power and authority of the board to the street commissioner.

"3d. That the public notice did not state or warn the property owners that the bituminous substances to be used as a cement should be those produced and controlled by Warren, designating the pavement simply as 'bituminous macadam,' which name did not imply or suggest the designation of any specific manufacturer's brand of binding material."

The petition also alleged that bituminous macadam was an untried experiment, and it had never been demonstrated by efficient use for a series of years that such pavement would constitute an efficient wearing surface

under city traffic. That the board had advertised for bids for a contract under the ordinance and would enter into a contract and issue special taxbills against plaintiff's property unless restrained by the court.

The answer admitted the ordinance and their proposed making of a contract thereunder as alleged and that said proceedings were in all things regular; that there was only one pure waterproof macadam which had been tried or tested and that this was a pavement composed of the Warren mixtures; that the specifications were as full and complete as the nature of the subject would admit.

I. It is conceded by the learned counsel for the plaintiff that this court in Asphalt Co. v. Hunt, 100 Mo. 22, held that the city of St. Louis under its charter was not prohibited from letting a contract for paving a street with material covered by letters-patent; that to hold otherwise would be to deprive the city of the right to enjoy the benefits of modern invention. When that question was again raised in Verdin v. City of St. Louis, 131 Mo. 26, the Hunt case was re-affirmed and the doctrine as to patented material was extended to a material whereof the owner had a monopoly by reason of his exclusive ownership of the natural supply of such material.

As was said in the latter of those two cases, so many contracts had been entered into on the faith of the decision of this court in the Hunt case, that it had practically become a rule of property, and that it was too late to disturb that ruling. But it is insisted that those cases went too far, and while this court might not disturb them on the principle of *stare decisis*, they ought not to be extended, because to do so would strike down the last protection of the abutting property owners against discrimination and favoritism in contracts for public improvements which are made a charge *in invitum* against the private citizen. The insistence is that the facts of this case do not bring it within either

the principle of a governmental patent, nor yet within the Verdin case, a monopoly based upon the ownership of the only source of supply of a natural product, but it is a designation by the Board of Public Improvements and ratified in the ordinance by the Municipal Assembly, of certain brands of a certain manufacturer of a well known mercantile article, preparations of coal tar, and in so doing the Board and the Municipal Assembly deprived the taxpayers of all the benefits of competition which the charter secured to them in the letting of public work.

On the other hand, the city maintains that its Board of Public Improvements and its Municipal Assembly are vested with the power to determine the character of street improvements and the courts will not undertake to interfere with the discretionary powers of its officers within legal bounds; that when a city in the prosecution of a public work finds an article or material which in its judgment is best adapted to such work, it is not debarred from availing itself of it because such material is controlled by one party.

The circuit court dismissed the bill and held that the city authorities were authorized to specify Warren's Brands of Coal Tar Cement as the binding material in the construction of a bituminous macadam pavement.

After a careful reading of this record we gather that for many years pavements have been made of coal tar and coal tar productions, but the difficulty encountered was the inequality of the tar preparations, and we think the burden of the proof was that coal tar cement properly made is a most excellent binding for macadam; that it resists water when properly made. A notable case is of a pavement laid in Washington City thirty years ago and which is still in excellent condition, but it had been discontinued by contractors because of their inability to get a uniform quality sufficient for any considerable amount of work. But the evidence tends to prove that the Warren Brothers, Cambridge, Massa-

chusetts, by continued effort have succeeded in making a uniform coal tar cement; that while other dealers in coal tar products might produce a cement of uniform quality, as a matter of fact they have never yet done so, and at the time West Pine Boulevard was to be reconstructed there was no other company or individual except Warren Brothers making a satisfactory coal tar cement. The Barrett Manufacturing Company, the largest coal tar manufacturing company in the United States, are, or were not, at the time this contract was let, equipped for making such cement, and their general manager testified he did not know what equipment was necessary, but thinks they could make it.

There was then this condition confronting the Board of Public Improvements and Municipal Assembly when they came to decide what material they would adopt for the reconstruction of West Pine Boulevard. The bituminous macadam had the advantage over the asphalt pavement in that horses were not liable to slip and fall on it, especially in cold weather. It was sufficiently strong owing to the rock in its composition to carry great weight and the coal tar cement was impervious to water and would make an enduring pavement. A large number of other cities were using it to advantage. They were desirous of testing it, but they were advised that the only proper binding for the macadam known up to that time was the Warren's Cement, and accordingly they required that cement in the specification submitted.

The main contention of plaintiff is that by so specifying Warren's Brand they have prevented competition and thus violated the charter. This question is by no means a new one. While the learned counsel for plaintiff urges that coal tar is a common article of merchandise and that the specifications should not have been limited to the Warren brands of coal tar cement, we think the proofs demonstrate that up to this time there was only one such cement so made as to be equal and uniform. How then can it be said that in adopting the

only proper cement known for the binding in a bitumi-
nous macadam pavement, the board exceeded its author-
ity any more than it would have done if it had adopted
an asphalt pavement and specified  Trinidad Lake As-
phalt as the material?

This court approved the Trinidad Lake Asphalt
specification in the Verdin case, because the monopoly
therein resulted from the ownership of the whole natu-
ral supply of that article.  Can it make any material
difference that that supply in this case is the result of a
long and persistent effort to produce a uniform cement.
In each case the owner has the only material which the
city desires to use.  Having held, as this court has in the
Hunt case, 100 Mo. 22, and in the Verdin case, 131 Mo.
26, that the city is not precluded from using the best ma-
terial merely because it is a patented article or a mo-
nopoly which denied competition, how can it be consist-
ently ruled that it can not use another equally desirable
article because only one firm manufactures it?    It is
not answered by saying other persons might produce it.
They have not done so, and a public improvement is not
to be delayed to await the pleasure of other persons to
experiment and see whether they can produce proper
material.   But it is insisted that that Board and Mu-
nicipal Assembly might have accomplished the same re-
sult by selecting a cement of the standard of the War-
ren company.   In other words, knowing there was no
other proper and uniform coal tar cement made except
that of Warren Brothers, they could have fixed theirs
as the standard.  Would it not at once be said, and prop-
erly so, too ,that they might as well have specified War-
ren's brands directly as to have done so by indirection?
We readily concede that if it had appeared that more
than one firm made coal tar cement of uniform quality,
then it would have been the bounden duty of the board
to have fixed a standard and invited competition, as was
ruled in Schoenberg v. Field, 95 Mo. App. 241.  In that
case it was properly ruled that when the Board of Pub-

lic Improvements arbitrarily selected vitrified brick of a certain make, when the board's own records disclosed that other manufacturers made brick of the approved standard, it was a denial of competition and void. In this case we find from the evidence that there was but one known manufacturer of coal tar cement of equal and uniform quality and that was made by Warren Brothers. Had the evidence disclosed that other manufacturers made a coal tar cement suitable for binding the rock in the macadam we think it would have been the duty of the board to select a standard of such cement, and required bidders to conform to that standard, and provided proper tests, but where, as in this case, the whole supply is owned by one company or individual, and it is the only suitable article for the public improvement, we see no reason for denying the city the right to avail itself of it, if we are to adhere to our former decisions permitting the city to use patented articles and materials in which one party has a monopoly by the ownership of the natural supply.

II. As to the objection that the specifications did not call for coal tar cement in so many words but named Warren's Puritan Brands, the evidence clearly indicates that all the contractors understood fully that these brands were coal tar cements.

III. The notice to the property owners to consider the improvement we think was a substantial compliance with the charter, referring as it did to the specifications on file in the offices of the board and the street commissioner.

Nor was the ordinance void because it left certain details to the discretion of the proper city officials. The evidence discloses that such details amounted to an infinitesimal proportion of the work.

In consideration of the whole record we think the judgment should be and it is affirmed. *Robinson, C. J., Brace, Marshall* and *Valliant, JJ., concur; Fox, J.,* dissents; *Burgess, J.,* absent.