THE STATE OF CONNECTICUT EX REL. CITY OF STAMFORD
*vs.* THE BOARD OF PURCHASE AND SUPPLIES
OF THE CITY OF STAMFORD.

Third Judicial District, New Haven, January Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued January 22d—decided March 6th, 1930.

*J. Walter Madigan,* for the appellant (defendant).

*Daniel E. Ryan,* for the appellee (plaintiff).

HAINES, J.   The case involves a conflict of authority between two branches of the city government of Stamford.   The common council adopted a resolution on June 17th, 1929, directed to the board of finance, requesting that that board make an appropriation for the use of the fire department, and specified among the articles to be purchased "One American La France City Service Truck, $10,000," and "extra equipment for City Service Truck $193."   This resolution was approved by the mayor, and on June 25th, 1929, the board of finance granted the appropriation in the form and for the amounts requested.   On June 28th, 1929, the common council passed another resolution empowering the chief of the fire department to expend in the manner prescribed by the ordinances and with the approval of the fire committee, $10,193 for "One American La France City Service Truck type #14 six cylinder $10,-000" and "extra equipment for City Service Truck $193, total $10,193."   This resolution was approved by the mayor, and on the following day, June 29th, 1929, the chief of the fire department, with the ap-

proval of the fire committee, as required by ordinances, requested the defendants, board of purchase and supplies and the purchasing agent, to purchase the truck specified as follows: "One American La France, type 14, six cylinder Service Truck, as per specifications, at once, $10,000: From American La France and Foamite Industries, Inc., Fisk Building, Broadway, . . . New York City." The defendants refused and still refuse to make the purchase, and the State's Attorney for Fairfield County on behalf of the city of Stamford, brought this application for a writ of mandamus to require the defendants to make the purchase as requested. The defendants filed a motion to quash the application, and the issues presented upon this appeal arise from the action of the trial court in denying the motion to quash.

The board of purchase and supplies contends that it has no legal authority and is under no legal obligation to make the purchase because it is vested only with supervisory authority over the purchasing agent, and that it is therefore not subject to the jurisdiction of the Superior Court in this action. The purchasing agent defends on the ground that he is without legal power to make the purchase for the reason that the legislature has imposed upon him the duty to obtain at least two bids for all proposed purchases where the amount to be expended is more than $200, and that the truck specified in this proposed purchase is obtainable from one source only, being a patented article.

We consider first the authority of the common council: By the charter of the city of Stamford as revised in 1915 and amended down to and through the session of 1927, it appears that the common council is vested with certain comprehensive and specific duties and powers, among which are the following: "To regulate and fix the salaries and compensation of all

officers and employees of said city, and prescribe the duties of said officers and employees; . . . to create such new offices in the police or fire department of said city as said council may deem advisable, and may add to or decrease the number of men in any branch of said departments; . . . to protect said city from fire and from danger of fire; . . . to organize, maintain, and regulate a fire department and provide suitable apparatus, buildings, horses, and appurtenances therefor; to establish fire limits; . . . to prescribe the amount of bonds to be given by city officers or employees, and to confer upon the officers of said city all proper authority to enable them to exercise their official powers and to discharge their official duties." Sec. 75. "Said common council is hereby authorized to make, alter or repeal, and enforce any ordinances, not inconsistent with this act, or with the laws of this State or of the United States, which it may deem conducive to the general health, peace, good order, welfare, and safety of the inhabitants of said city and for the protection of the property therein. . . ." Sec. 77. "There shall be a fire department of said city which shall consist of a chief and a deputy chief, both of whom shall be permanent firemen and not call-men, [and] such number of other permanent firemen as the common council may from time to time determine, and the present call-men, the duties of all of whom, except as herein specified, shall be determined by the common council, and all of whom shall hold office, unless otherwise herein provided, until removed by the common council for malfeasance in office, neglect of duty, incompetency, or other just cause, but none of whom shall be removed without due notice and hearing." Sec. 196. "The common council may make such rules and regulations, not inconsistent with this act, as it may deem advisable for the government of said fire

department." Sec. 203. Unless modified by later legislative provisions, which we shall consider, there can be no fair question but that the authority of the common council to direct the purchase of this particular truck subject to the approval of the mayor, and the act of appropriation by the board of finance, is plenary and absolute.

The charter provides for a board of finance, consisting of eight members, electors of the city, appointed by the mayor and confirmed by the common council, who serve without compensation and hold no other city office. Sec. 96. The mayor is ex officio a member and the presiding officer at all meetings of the board, but without a vote save in the event of a tie. Sec. 97. The city clerk is the clerk of the board of finance. Sec. 98. The board of finance, after public hearing, takes action on the budget submitted by the common council, and makes appropriations for each of the departments of the city government and for other city purposes as it deems appropriate, and transmits a statement of its doings to the common council. Sec. 104. If extra or additional appropriations are sought by the common council, the board, upon public hearing, takes action at its next regular meeting or at a special meeting, and makes such appropriation as it deems proper and reports its action to the common council. Sec. 105. All appropriations made by the board of finance must be made by items "specifying the amount of money appropriated therein and the purpose for which such amount is appropriated," and none of the appropriation shall be used for any other purpose than that specified. Sec. 106, amended by Special Acts of 1929, Chap. 443, § 15. From this it appears conclusively that the appropriation and the specific purpose for which it was made in this case, was properly authorized by the board of finance. In

the absence of any qualifying or restricting legislation, the powers of the common council and the board of finance, which we have traced, gave ample sanction for the order for this truck, in all its terms.

The defendants claim, however, that there are such qualifications and limitations upon the authority of the common council to be found in an Act of the General Assembly, amending the Act of 1927, and approved June 18th, 1929. That Act created a board of purchase and supplies, consisting of four resident electors of the city, not more than two to be of the same political party. "The chairman of the finance committee of the common council shall be, ex officio, a member of said board" and shall preside at all meetings, but without a vote except in the event of a tie. The members of this board, like those of the board of finance, are nominated by the mayor and confirmed by the common council. Charter, § 96, amended by Special Acts of 1929, Chap. 443, § 24. The same Act of 1929 also amended former legislation creating a park commission, Sec. 4; creating a board of estimate and appraisal, Sec. 8; a board of public safety, Sec. 11. All the members of these boards are also nominated by the mayor and confirmed by the common council. The mayor may call upon any of these boards for detailed estimates of the amount of money which will be necessary for its department for the ensuing year, and the entire budget, except that for the park commission and the board of public safety, must be submitted by the city clerk to the common council, and thereupon transmitted by the common council to the board of finance with any recommendations for changes which the common council deems desirable. Special Acts of 1929, Chap. 443, § 14.

"Said board of purchase and supplies shall appoint a purchasing agent who shall be a resident elector

of the city of Stamford and he shall hold office during the pleasure of the board. It shall be the duty of the purchasing agent to purchase or procure, under the supervision of all members of said board, all articles, materials and supplies for the use and needs of the city of Stamford and all departments, boards and officers thereof, for which the board of finance has made the necessary appropriation. Whenever any by-product or any other personal property of any department of the city which makes purchases through this board shall be sold, the sale shall be made by the purchasing agent. On each requisition for such articles, supplies and materials which amounts to more than $200, said purchasing agent shall obtain at least two bids and such orders shall be placed with the lowest responsible bidder. Said purchasing agent shall be under the supervision of said board. The right is reserved to reject any or all bids. The salary of said purchasing agent shall be fixed by said board, subject to the approval of the board of finance of the city of Stamford, and the amount of said salary shall be included in the yearly budget of the city of Stamford. The members of said board shall serve without salary or compensation and, while members of said board, shall hold no other city office nor be concerned in any contract affecting said city and upon which said board has acted." Special Acts of 1929, Chap. 443, § 24.

We cannot concur in the defensive claim set up by the board of purchase and supplies, that having only supervisory power over its purchasing agent, it has no power to make the purchase in question. The clearly manifested legislative intent is to vest the responsibility, discretion and control in the board as such and not in the purchasing agent. Whatever that agent does he must do as the representative and agent of the board which appoints him. It will be noticed that,

referring to by-products and other personal property to be sold, the language of the Act is "any department of the city which makes purchases through this board," indicating that it is the board and not the agent, who is primarily charged with this duty. The claim of the board of purchase and supplies that it is not a proper party to this action of mandamus, is without force. There is no defect or misjoinder of parties in the present proceeding. "If the duty must be performed by several persons holding different offices, the writ runs to each and all. If the duty is a single duty which must be performed by a number of persons holding the same office, the writ may run to them by their official name or by their individual names." *Norwalk & South Norwalk Electric Light Co.* v. *Common Council of South Norwalk,* 71 Conn. 381, 390, 42 Atl. 82. Counsel for the defense further say in their brief: "It is admitted that the common council still retains the power to organize, maintain and regulate the fire department, but it is our claim that the power of the common council to provide or purchase suitable apparatus has been revoked by the 1929 amendment." This is equivalent to saying that the defendants can determine what apparatus is suitable for the needs of the fire department. The same reasoning must apply to other departments of the city government. If the defendants can substitute their discretion for that of the other departments, it can deny to the street department the right to prescribe a certain style of pavement or a certain type of traffic light or of paving material, or the health department to prescribe a certain chemical compound. There is no such grant of power in the amendment of 1929. There is no repeal or stated limitation upon that portion of § 75 of the charter which says that the common council shall have power "to organize,

maintain, and regulate a fire department and provide suitable apparatus, buildings, horses, and appurtenances therefor." How could the fire department be maintained or regulated by the common council without the power to provide suitable apparatus? If the power to provide what it deems to be suitable were vested in the defendants' department, the essential control of the fire department would be removed from the hands of the common council, and its successful operation would depend almost entirely upon the will of the defendants, since its efficiency depends largely upon the apparatus furnished it. We can discover no such intent in the legislative Act referred to. On the contrary, that Act took from the common council and vested in the board of purchase and supplies and its agent, one function and one only, and that the actual purchase of supplies for the city, and prescribed how that function should be exercised. The discretion as to the particular article to be purchased lies, in the present instance, with the common council and board of finance. The board of purchase and supplies cannot make any purchase whatever without prior order, and when, as in this case, the common council has made its order for a purchase, and it has received the approval of the mayor and an appropriation therefor has been made by the finance board, specifying the item to be purchased and naming the appropriation to be used therefor, that purchase must be made. "It shall be the *duty* of the purchasing agent to purchase or procure under the supervision of all members of said board, all articles, materials and supplies for the use and needs of the city of Stamford and all departments, boards and officers thereof, *for which the board of finance has made the necessary appropriations.*" Special Acts of 1929, Chap. 443, § 24. The duty of the defendants is plain.

Another defense in this action, however, is more serious. It is tacitly agreed by counsel who have argued the case upon that assumption, that this fire truck is sold only by one party, having the exclusive right to sell it. While we hold the order for its purchase comes to the defendants with full legal authority, the defendants claim it cannot be executed because it is impossible to obtain at least two bids and purchase it from the lowest responsible bidder. If this contention is sound, an impasse in the government of the city of Stamford results. A purchase which the common council is given authority to make and which it attempts to make in the discharge of its duty under the charter to protect the lives and property of the citizens, cannot be made. The consequences of such a situation may quite possibly be disastrous, not only to the fire department but to all other departments of the city government.

The defendants say the requirement for bids prevents the purchase. What then shall be said of that provision? On the one hand, we find the common council exercising not only its undoubted right but fulfilling its imperative duty to provide the fire department with suitable apparatus for which the taxpayers' money has been supplied and which they are entitled to expect. On the other hand, if the requirement of two bids is to be interpreted literally and applied to a situation of this kind, we must hold the legislative intent to be that the city of Stamford may not avail itself of new discoveries and new developments and the most modern of materials and supplies, if these are protected, as is often the case, by patents, so that their sale is controlled from a single source. This is offensive to the fundamental principles of a sound public policy, and would require the city to "travel in the same paths in which the predecessors trod, without

benefit from any new discoveries of science, or any advances in matters of work applicable to public use." *Dolan* v. *Mayor,* 67 N. Y. 609 (quoted in *Monaghan* v. *Indianapolis,* 37 Ind. App. 280, at page 315, 76 N. E. 424, 436).

It cannot be thought for a moment that the legislature had this result in mind when the provision was inserted in the amendment of 1929. If any such drastic limitation upon the power of the common council had been intended, we would expect in view of the far reaching consequences to the well being of the inhabitants of that city, to find some clear statement to that effect. The governing body, common to all such municipal corporations, is the common council. It is the general agent of the corporation for all purposes and exercises all powers not expressly granted to other governing agencies. In the absence of express authority, the governing board of the corporation must itself exercise all discretionary powers, and they cannot be exercised by any other board or agency. 43 Corpus Juris, pp. 237, 238, 240. "It should . . . be remembered that the legislative power vested in the common council includes a right to control and regulate by means of local laws the municipal affairs, and necessarily modifies in many ways the execution of powers vested in other departments of the city government. Under such a system it is hardly possible to draw a precise line which shall separate executive from legislative powers. The powers definitely given to each department are modified in their exercise by powers definitely given to the other; the harmonious operation of the system must depend upon the application of that good faith, assumed in all divisions of governmental power, which requires each set of officers to exercise their powers in harmony with the powers given to others; so that the object of the legislature in the

apportionment of municipal functions which are essential to the accomplishment of one result, may be made effective for the protection of the city's interests." *Hartford* v. *Hartford Electric Light Co.*, 65 Conn. 324, 329, 32 Atl. 925. The provision for bids is obviously based upon the sound view of preventing favoritism, corruption and improvidence and other evils which might flow from the award of municipal contracts, and it should be so construed as to effectuate as far as possible the legislative intent in that regard. Whether this can be done under such circumstances as here presented, without destroying the power of the common council and other departments of the city government to meet the city's needs, raises a question of serious import to every municipality in the State, and one which we have never yet been called upon to specifically decide, although some aspects of the question were presented in *Litchfield* v. *Bridgeport,* 103 Conn. 565, 577, 131 Atl. 560. As might be expected, there are sharp conflicts of opinion in various jurisdictions in this country upon this precise question. One view is that a municipality whose charter contains a provision of this character is effectually and completely precluded from acquiring articles or materials, which by reason of patents or otherwise, are procurable from a single source. They hold that the provision must be literally construed and applied: *Dean* v. *Charlton,* 23 Wis. 590; *Nicolson Pavement Co.* v. *Painter,* 35 Cal. 699; *Fineran* v. *Central Bitulithic Paving Co.,* 116 Ky. 495, 76 S. W. 415; *Allen* v. *Milwaukee,* 128 Wis. 678, 106 N. W. 1099; *Monaghan* v. *Indianapolis,* 37 Ind. App. 280, 76 N. E. 424. The opinion in the last-named case was by a divided court, and a vigorous and exhaustive dissenting opinion upon this question was filed. *Dean* v. *Charlton* is

perhaps the pioneer case in support of this view, and is generally referred to in supporting opinions.

There is a modified view of the question which is reflected in some decisions to the general effect that while the requirement of advertising for bids and letting the contract to the lowest responsible bidder is a condition precedent to a valid purchase, it does not necessarily defeat the purchase of articles which are patented and can only be had from a single source, and that it is only necessary for the city to advertise in the usual way for bids and accept whatever bid is made if there is none lower, and if in the opinion of the municipal authories, it is for the interest of the city to accept it. The underlying conclusion in those jurisdictions seems to be that the real purpose and intent, the spirit and not the letter of the law, is complied with in the absence of fraud or corruption when specifications are submitted to competitive bidding although some article may be specified which is controlled by a patent or other monopoly. As illustrating certain features of this view we may mention: *Barber Asphalt Paving Co.* v. *Hunt,* 100 Mo. 22, 13 S. W. 52; *Swift* v. *St. Louis,* 180 Mo. 80, 79 S. W. 172.

Another line of decisions rests squarely upon the proposition that the requirement for bids goes no further than the purpose intended to be served and does not reflect any legislative intent to forbid the acquisition by the city of such articles as in the judgment of the proper municipal authorities, will best serve its needs whether obtainable from several sources or from but one source; that the intent could not have been to require the impossible. The position taken in these decisions accords with our own views as to a sound public policy. While, as we have indicated, this precise question has not before been presented to us, the essential principle underlying this view is strongly

stated in an early opinion in this State, in a case which arose in the city of Hartford. It was required by law that contracts for city work which exceeded $500 should be publicly advertised and the contract awarded to the lowest bidder. It was desired to obtain electric current for lighting purposes, and one company had a virtual monopoly. This court said: "When a general statute requires such advertising, it should not be strained beyond the reasons which support it; so such a statute has been held in other jurisdictions not to apply to a patented article, nor to the furnishing of an article such as gas, of which one company has a monopoly, nor to articles dependent for value upon the personal skill of the manufacturer, such as fireworks, nor to professional services." *Hartford* v. *Hartford Electric Light Co.*, 65 Conn. 324, 335, 32 Atl. 925. Differences in circumstances and in the language of statutory and charter provisions, necessarily limit the number of cases which can be held to be strictly analogous to our own, but the principle upon which we rest our conclusion finds support, in one form or another, in the following decisions among others: *Hobart* v. *Detroit*, 17 Mich. 246; *Motz* v. *Detroit*, 18 Mich. 495, 515; *Holmes* v. *Common Council*, 120 Mich. 226, 79 N. W. 200; *People ex rel. Smith* v. *Flagg*, 17 N. Y. 584; *Harlem Gas Co.* v. *Mayor*, 33 N. Y. 309; *Baird* v. *Mayor*, 96 N. Y. 567, 582, 583; *Detwiller* v. *New York*, 46 How. Pr. (N. Y.) 218; *People ex rel. Smith* v. *Flagg*, 5 Abb. Pr. (N. Y.) 232. *Hobart* v. *Detroit* is a leading case in support of this view of the question.

Without citation of further decisions, we may say that preponderance of authority as reflected in the soundest opinions, clearly supports the view which we take of this matter. We hold that the charter of the city of Stamford having expressly conferred upon the

common council the broad and comprehensive power of prescribing the apparatus for its fire department, that power should not be limited save by clear and inescapable provisions to that effect; that the requirement for bids cannot and should not be held to express a legislative intent to so far limit this broad power as to deprive the city of what in its judgment, are the best materials or equipment whether these are obtainable from several sources or from but one source. "The intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star for the court. It must prevail over the literal sense and the precise letter of the language of the statute." *Bridgeman* v. *Derby,* 104 Conn. 1, 8, 132 Atl. 35; *Brown's Appeal,* 72 Conn. 148, 150, 44 Atl. 22; *Stapleberg* v. *Stapleberg,* 77 Conn. 31, 35, 58 Atl. 233; *Wetherill* v. *Hollister,* 73 Conn. 622, 625, 48 Atl. 826. "When one construction leads to public mischief which another construction will avoid, the latter is to be favored unless the terms of the statute absolutely forbid." *Bridgeman* v. *Derby, supra; Balch* v. *Chaffee,* 73 Conn. 318, 320, 47 Atl. 327. "A statute should be construed, having in view the nature and reason of the remedy and the object of the statute, in order to give effect to the legislative intent." *Newton's Appeal,* 84 Conn. 234, 241, 79 Atl. 742.

We hold that the terms of the provision for bids from two sources has no application, and was not intended by the legislature to have any application, to the facts presented in this case; that it was within the power of the common council to specify the purchase of the particular truck as it did, and that it is the duty of the defendants to make the purchase. In reaching this conclusion we must assume the common council has fairly and properly exercised its authority

and that it deems this particular purchase to be for the best interests of the city of Stamford.

There is no error.

In this opinion the other judges concurred.