## CURTICE v. SCHMIDT et al., Appellants.

**Division One, March 28, 1907.**

1. **APPELLATE JURISDICTION: Constitutional Question: Mandamus to Transfer: Laches.** Where plaintiff injected a constitutional question into the case by an instruction in the trial court and pressed it on the attention of the Court of Appeals when the case was appealed to that court, no laches are chargeable to him in regard to the proper preservation of the point, if he files his motion there to transfer to this court before the case is heard and determined in that court.

2. **TAXBILL: Objections: To be Filed Within Sixty Days.** Section 23 of article 9 of the charter of Kansas City, requiring the owner of property abutting on a street which has been improved to file with the board of public works all his objections and defenses to special taxbills issued against his property within sixty days after the taxbills are issued, or be forever barred from making said defenses when sued thereon, is unconstitutional and void.

3. **———: Selection of Material: Within Ten Days.** Where the charter requires the selection of the material with which the improvement is to be made, to be made by petition, and requires the petition to be filed with the board within ten days, Sunday is to be included in counting the ten days. It does not mean ten days excluding Sunday.

4. **———: Completion Within Time.** Where the ordinance requires the street improvement to be completed within a reasonable time, and the contract requires it to be completed within ninety days after the contract becomes binding "unless the engineer shall especially otherwise direct in writing," and the

work is begun in time, and thereafter suspended by the engineer because of freezing weather and the lateness of the season, and after the suspended period has expired the work is resumed, and completed in ninety days from the contract's confirmation excluding the time in which the work was suspended, the taxbills are not void on the theory that the work was not finished in proper time. It is not proper, in such case, to include the time during which the work was suspended as a part of the ninety days.

5. ———: **Eight-Hour Ordinance.** Taxbills are not void because the contract for the improvement required the contractor to observe an eight-hour labor ordinance of the city. Such an ordinance is valid, and the incorporation of its provisions in public contracts is proper. · All contracts must be made with valid subsisting laws and ordinances in view, and such laws and ordinances are read into them and become a part of them whether specifically mentioned therein or not.

6. ———: **Competition: Vitrified Brick.** Where the charter and ordinance provisions require a public letting to the lowest and best bidder, the board of public works shut out competition by designating "Pittsburg (Kansas) Vitrified Brick Company's vitrified brick" as the material to be used, and the taxbills are void. Vitrified brick of a certain standard is a proper designation, but vitrified brick manufactured by a named company is not. Vitrified brick is not an exceptional character of material, yet a designation of brick manufactured by a certain company as the material to be used makes that material a monopoly, and shuts out competition in the bidding and in the awarding of the contract.

Transferred from Kansas City Court of Appeals.

REVERSED AND JUDGMENT HERE.

*N. F. Heitman* for appellants. ·

(1) The court erred in refusing to give our declarations of law which fully set forth our theory on monopoly. The facts in the record bring this case squarely within the doctrine of Shoenberg v. Field, 68 S. W. 945, and the lower court erred in refusing to follow and apply said doctrine in this case. In addition to the authorities cited in Shoenberg v. Field, we cite the following on monopoly, most of which are

found in our brief in the Shoenberg case, to which we again refer: Art. 17, sec. 12, Kansas City Charter; Dillon on Municipal Corp. (4 Ed.), secs. 322, 325, 329 and particularly 362 (also see secs. 694 and 695); City of Atlanta v. Stein, 111 Ga. 789; Adams v. Brennan, 177 Ill. 199; Chicago v. Rumpf, 45 Ill. 90; Town of Crowley v. West, 52 La. Ann. 533; Brooks v. Cooper, 50 N. J. Eq. 761; State ex rel. v. Warden of Prisons, 157 N. Y. 126; Sayre Burro v. Phillips, 148 Pa. St. 482; McQuiddy v. Brannock, 70 Mo. App. 548; Texas Standard Oil Co. v. Adoue, 83 Tex. 650; Baily v. Master Plumber, 103 Tenn. 114; National Surety Co. v. Hydraulic Press Brick Co., 84 Pac. 1034; State v. Gas Co., 153 Ind. 489; U. S. v. Fuel Co., 105 Fed. 93; U. S. v. Coal Dealers Assn., 85 Fed. 252; Gas Co. v. Texas, 22 Tex. Civ. App. 118; Gas Co. v. Texas, 54 S. W. 289; Nester v. Brew. Co., 161 Pa. St. 473; Kiley v. Oppenheimer, 55 Mo. 374; St. Louis Quarry & Con. Co. v. Von Versen, 81 Mo. App. 519; Brady v. Bartlett, 56 Cal. 350.   (2)   The eight-hour ordinance is void.   Seattle v. Smythe, 22 Wash. 327; In re Morgan, 26 Colo. 415; Low v. Printing Co., 41 Neb. 129; Ex parte Kubeck, 85 Cal. 274; Ritchie v. People, 29 L. R. A. 79; State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 163; Fiske v. People, 188 Ill. 266.   (3)   The court erred in refusing to give defendants' declaration of law relating to the board's ignoring the majority petition selecting Trinidad Lake asphalt.  Sec. 2, art. 9, Kansas City Charter; Forbes v. Bradbury, 58 Mo. App. 506; F. B. Co. v. Geist, 37 Mo. App. 509.

*Scarritt, Scarritt & Jones* for respondent.

(1)   No selection of the material with which the street was to be paved was made by the property-owners within the time designated by the charter, art. 9, sec. 2.  St. Joseph ex rel. v. Landis, 54 Mo. App.

315; State v. Green, 66 Mo. 631. (2) The work was completed within the time stipulated in the contract. The ordinance pursuant to which this work was done does not fix the time, directly or indirectly, within which the work should be completed. The specifications in the contract wherein the time of completing the work is mentioned are not made a part of that ordinance. It is not essential that the ordinance should state the time within which the work was to be done. Strassheim v. Jerman, 56 Mo. 104; Carlin v. Cavender, 56 Mo. 186; Heman v. Gilliam, 171 Mo. 258; Thorn & Hunkins L. & C. Co. v. Bank, 158 Mo. 272; Heman Const. Co. v. Loevy, 179 Mo. 455. (3) The eight-hour ordinance is constitutional and valid. There is an act of Congress quite similar in terms to the Kansas City ordinance. R. S. U. S., sec. 3738. The law has been held valid and enforced by the Supreme Court of the United States in United States v. Morton, 94 U. S. 400; St. Louis Q. & C. Co. v. Frost, 90 Mo. App. 677. Similar laws have been held constitutional in the following and other cases: State v. Holden, 14 Utah 71; Com. v. Hamilton Mfg. Co., 120 Mass. 383; People v. Warren, 77 Hun 120; Billingsley v. Marshall Co., 5 Kan. App. 435; State v. Atkin (Kan), 67 Pac. 519; In re Dalton, 61 Kan. 257; Treat v. People, 195 Ill. 196; Hamilton v. People, 194 Ill. 133; Givins v. People, 194 Ill. 150. (4) Pittsburg vitrified brick was a material of a different and superior quality for street paving purpose to the other brick named. The legislative authorities of Kansas City so determined in good faith and upon reasonable grounds and it is not the province of the courts to review that determination. Motz v. Detroit, 16 Mich. 495; Dixon v. Detroit, 86 Mich. 516; Verdin v. St. Louis, 131 Mo. 26; Field v. Pav. Co., 17 Fed. 925; Pav. Co. v. Field, 188 Mo. 182; Swift v. St. Louis, 180 Mo. 80.

GRAVES, J.—Action to enforce the collection of an installment taxbill issued by Kansas City of date April 29, 1897. Judgment was for the plaintiff in the circuit court of Jackson county, where trial was had before the court without the intervention of a jury. Defendants appealed to the Kansas City Court of Appeals where the judgment was reversed. Plaintiff, who had injected a constitutional question, by way of instruction in the lower court, and had preserved it throughout in the Court of Appeals, then instituted a mandamus proceeding in this court to compel the Court of Appeals to certify the cause to this court. The mandamus proceeding was heard by this court and the peremptory writ of mandamus awarded. [State ex rel. v. Smith, 177 Mo. 69.] Thus the case is here by our own opinion. It might be well to add that plaintiff filed his motion to transfer to this court before the case was heard and determined by the Kansas City Court of Appeals, and no laches are chargeable to plaintiff in regard to the proper preservation of his point. In the opinion of MARSHALL, J., in the mandamus case, supra, the issues of the case at bar are thus stated:

"J. M. Curtice sued Frank F. and Mollie Schmidt in the circuit court of Jackson county, upon a certain taxbill, issued April 29, 1897, by virtue of ordinance 7599, authorizing the paving of Nineteenth street between Tracy avenue and Olive street, said taxbill being issued against lot 58 of Elder's addition to Kansas City, and owned by defendants herein.

"The answer of the defendants in that case is, first, a general denial, except as otherwise expressly admitted in the special defenses. Second, an admission that the plaintiff owns the taxbill and defendants own the land. Third, that the taxbill is void because the work was not completed within the time provided by the contract. Fourth, that the taxbill is void because the contract required the contractor to observe

the 'eight-hour' ordinance of Kansas City. Fifth, that the taxbill is void because the ordinance authorizing the paving of the street specified six kinds of materials that might be used in paving the street, and that the owners of a majority in front feet of the lands fronting the improvement, selected, as they had a right to do, Trinidad Lake asphalt as the material to be used for such paving, it being one of the six materials mentioned in the ordinance from which a selection was to be made, but that the board of public works disregarded the selection of the property-owners, and designated Pittsburg (Kansas) Vitrified Brick Company's vitrified brick as the material to be used. Sixth, that after the said board wrongfully designated such vitrified brick, specifications for work were prepared, and a contract therefor was let, that the contract was confirmed by ordinance of the city, and 'that such designation, specifications, contract and ordinances are illegal and void, first, because they are contrary to the Kansas City charter requiring said pavement to be let to the lowest and best bidders; second, because they were unauthorized by the Kansas City charter and in violation thereof in excluding from use in the pavement in question all vitrified brick of similar quality, excepting Pittsburg (Kansas) Vitrified Brick Company's vitrified brick. Seventh, that prior to the passage of the ordinance authorizing the improvement, the board of public works made a pretended designation of the materials which the property-owners might select from, but that said designation did not comply with the charter of Kansas City, and that the details specified in the said designation of such materials, all specify some particular, special kind of material in such way as to promote monopoly and prevent competition, and that such designation violates the charter of Kansas City, which requires such work to be let to the lowest and best bidder.'

"The reply is a general denial with a special plea as follows:

" 'Further answering plaintiff states that none of the defendants nor any owner of the tract of land described in the petition and in the taxbills therein referred to, nor the owner of any interest therein, did within sixty days from the issue of the said taxbills described in the petition, file with the board of public works of Kansas City, a written statement of each and all objections which he or they had to the validity of such taxbills, the doing of the work mentioned in said taxbills, the furnishing of the materials charged for, the sufficiency of the work or materials therein used, or of any mistake or error in the amount thereof, or a statement of any of the objections of facts alleged in the amended answer, and that by reason of the premises the defendants ought not to be heard to plead, or prove all or any of the facts alleged in their amended answer.'

"When the case came on for trial, the plaintiff introduced a resolution of the board of public works relating to the issuance of special taxbills, and the special taxbill sued on, and then rested.

"The defendants offered in evidence the ordinance authorizing the improvement, and also section 811 of the Revised Ordinances of Kansas City for 1898, regulating the advertising for bids for public work, and requiring the time for the completion of the work to be specified. Thereupon, the following proceedings were had:

" 'By Mr. Scarritt: We object to the introduction of any evidence on behalf of defendants relative to objections to the taxbills sued on, for the reason that no objections thereto have been stated in writing and filed with the board of public works of Kansas City, by the defendants or any of them or those under whom they claim, within sixty days after the date of the issue of such taxbills, and especially we ob-

ject, for the same reasons, to any evidence as to the petitions addressed to the board of public works in respect to the material with which the street should be paved, and also as to the time consumed in the execution of the work.

" 'Which objection was by the court overruled, to which ruling of the court plaintiff then duly excepted.

" 'By Mr. Heitman: It is admitted that no objection whatever to the taxbills sued on was stated and filed with the board of public works of Kansas City within sixty days after the issue of those taxbills.'

"The court then permitted the defendants to introduce evidence in support of their several defenses, and also heard evidence offered by the plaintiff bearing upon the several defenses.

"At the close of the evidence the plaintiff asked the court to declare the law to be as follows:

" '1. The court declares the law to be that under the pleadings and the evidence the finding and judgment should be for the plaintiff.

" '2. The court finds the facts to be, under the pleadings and admissions of the parties, that none of the defendants nor any owner of the land described in the petition or of any interest therein, did within sixty days after the date of the issue of the taxbill sued on, file with the board of public works of Kansas City a statement of any objections, which he or they had to the validity of the taxbill sued on, the doing of the work mentioned therein, the furnishing of the materials charged for, the sufficiency of the said work or materials therein used, or any mistake or error in the amount thereof.

" '3. The court declares the law to be that all the evidence offered and introduced tending to prove that the work of paving Nineteenth street, for which the taxbill sued on was issued, was not completed within ninety days after the contract therefor became binding, is irrelevant and immaterial under the pleadings

and admissions of the parties, and is not considered by the court in determining the issues in this case.

" '4. The court declares the law to be that the contract between Kansas City and Fred Feigel for paving Nineteenth street in evidence, is a valid contract; that it was confirmed by ordinance of Kansas City, November 21, 1896, and defined and established the rights of the respective parties thereto; and that to hold said contract void, in whole or in part, is to deprive the plaintiff of his property without due process of law and contrary to the terms of the fourteenth amendment to the Constitution of the United States.

" '5. The court declares the law to be that section 23, article 9, of the charter of Kansas City, is constitutional and valid and is to be taken and considered as incorporated in and forming a part of the ordinance authorizing the improvement in question, and the contract therefor, which are in evidence, as though written into each of them, and that to hold such section void and permit the defendants in this suit to plead or prove any objection or objections to the taxbills sued on, when no such objection or objections have been stated in writing and filed with the board of public works of said city within sixty days from the date of the issue of the taxbill sued on, is to violate the obligation of the said contract and to deprive the plaintiff of his property without due process of law, contrary to section 10, article 1, of the Constitution of the United States, . . . . and contrary to the provisions of sections 15 and 30, article 2, of the Constitution of Missouri.

" '6. The court finds that the contract for the work in question provides that said work shall be begun within ten days after said contract binds and takes effect, and shall be prosecuted regularly and uninterruptedly thereafter (unless the engineer shall specially direct otherwise in writing), with such force as to secure its full completion within ninety days

from the date of its confirmation, and that within said ten days after said contract bound and took effect the said engineer did specially direct in writing that owing to freezing weather and the lateness of the season, the contractor for said work is hereby ordered to cease operations until further notice; that said contractor was not notified by said engineer to proceed with the said work before February 20, 1897, and that the said work was completed on April 23, 1897, and that deducting the period of the suspension of the said work as ordered by the said engineer, the same was completed within ninety days after the confirmation of the contract for said work.'

"The court gave all of these instructions, except the fifth and refused that. The defendants asked sixteen instructions, covering all the phases of their several defenses, but the court refused them all. The court then entered judgment for the plaintiff, and the defendants appealed. The appeal was allowed to the Kansas City Court of Appeals. The plaintiff moved the court to transfer the case to this court, but the court overruled the motion, proceeded with the case and reversed the judgment of the circuit court without remanding the case."

The opinion of the Kansas City Court of Appeals by BROADDUS, J., is likewise found in this opinion by MARSHALL, J., supra; this with such further excerpts from the evidence as will be made in the course of the opinion states the case.

I. Instruction number 5, supra, refused by the trial court, squarely raises the validity of section 23, of article 9, of the charter of Kansas City and it was on the constitutional question here raised that this court compelled the Court of Appeals to certify the cause to this court. The identical question was before Division No. 2 of this court in the case of Barber Asphalt Pav. Co. v. Ridge, 169 Mo. 376, and again in Paving Co. v. Munn, 185 Mo. l. c. 566. Judge GANTT,

who wrote the opinion in both cases, after a review of the law in the Ridge case and in an opinion full of reason, holds such charter provision void. In that opinion and the one following it, we concur, and further discussion of the point is unnecesary.

II. The second proposition is as to the time within which the property-owners undertook to select the character of the material to be used in the construction of the street pavement. Upon this question we think that the Court of Appeals held correctly under this record.

The ordinance authorizing the paving to be done was approved September 9, 1896, and was first published on September 14th. The defendants claim that by a petition signed by the resident property-owners of the city, who owned the majority in front feet of the land fronting on the part of the street to be improved, Trinidad Lake asphalt was selected as the material for the pavement, which petition was filed with the board of public works on October 5, 1896. This selection they had a right to make under section 2 of Ordinance No. 7599, the ordinance authorizing the work, as well as under section 2 of article 9 of the charter of Kansas City. Section 2 of article 9 of the charter, says:

"Provided, further, however, that if the board of public works shall unanimously recommend to the city council that any business street or part thereof be paved . . . and the payment thereof is to be made in special taxbills, and the common council shall, by ordinance, order such work to be done by a vote of two-thirds of the members elect of each house of the common council, then such work may be done without any resolution, as hereinbefore provided and regardless of such remonstrance. When the work shall be so recommended by the board of public works and so ordered by the common council as last above mentioned, the resident owners of the city who own a majority in front feet of the lands belonging to such resi-

dents and fronting on such street . . . on part thereof to be improved, shall have the right to select the material with which such street . . . or part thereof shall be paved from not less than two kinds of materials, to be designated by the board of public works. Such selection to be made by them within ten days after such ordinance shall have taken effect and been published for ten days in the newspaper at the time doing the city printing, which selection shall be by petition addressed and delivered to the board of public works. If such selection be not made within such time, then the board of public works shall designate the material with which said street . . . or part thereof shall be improved.''

The board of public works had unanimously recommended the paving of the street as a business street, and the ordinance therefor passed the council by the required two-thirds vote.

It is a disputed question as to whether or not the petition designating Trinidad Lake asphalt was signed by the requisite number of qualified signers, and much evidence was introduced thereon. A consideration of this dispute is not necessary. Under the charter provision, and the ordinance, the petition was not filed within the ten days allowed, unless Sunday be excluded in computing the time. This should not be done. Sunday should be counted. [City of St. Joseph ex rel. v. Landis, 54 Mo. App. 315; Clapton v. Taylor, 49 Mo. App. 117; German Bank v. Stumpf, 73 Mo. 315; State v. Green, 66 Mo. 631.] It therefore appears that the property-owners failed to avail themselves of the privilege given them.

On October 20th the board of public works made the designation of the material to be used in this language:

''The board designates Pittsburg (Kansas) Vitrified Brick Company's vitrified brick on concrete to be laid according to detail one of brick pavement ap-

proved by said board August 11, 1896, and on file in the office of said board as the material with which Nineteenth street from the east line of Tracy avenue to the west line of Olive street shall be paved as a business street, as provided by Ordinance No. 7599."

The validity of this order as to its substance will be discussed in a succeeding proposition. Suffice it to say here that the property-owners, under the law, failed to make their designation in time, and the board of public works then had the right to designate and had that right October 20th when the designation was made.

III. Nor is the taxbill void because the work was not finished in proper time. The contract provides:

"6. The work embraced in this contract shall be begun within ten days after this contract binds and takes effect, and shall be prosecuted regularly and uninterruptedly thereafter (unless the engineer shall especially direct otherwise in writing) with such force as to secure its full completion within ninety days from the date of its confirmation; the time of beginning, rate of progress and time of completion being essential conditions of this contract. And if the contractor shall fail to complete the work within the time above specified an amount equal to the sum of ten dollars per day for each and every day thereafter, until such completion, shall be deducted as liquidated damages for such breach of this contract from the amount of the final estimate of said work."

The ordinance authorizing the work fixed no time within which it was to be begun or completed. The contract was confirmed by ordinance No. 7869 and became binding November 21, 1896. The work was commenced within ten days. On this contract the city engineer made the following notation:

"November 30th, 1896.
"Owing to the freezing weather and the lateness

of the season the contractor for this work is hereby ordered to cease operations until further notice from this office.

"HENRY A. WISE, City Engineer."

This order remained in force until February 20, 1897. The work was completed and accepted April 23, 1897, and the taxbills issued April 29th, six days later.

Although there is no time limit in the ordinance itself, yet such ordinance would be authority for a contract to complete the work within a reasonable time. The contract by the clause above quoted fixes a time limit, with a qualifying provision. This identical question was discussed in Heman v. Gilliam, 171 Mo. 258. In that case, BRACE, P. J., overruled the case of Ayers v. Schmohl, 86 Mo. App. 349, for holding just what the defendants would have us hold in this case. In speaking of the Ayers case, Judge BRACE says:

"With the reasoning of the opinion in that case we have no fault to find. The fault is in the application of the reasoning to the facts of the case. If the contract in that case had fixed a certain and definite time within which the work must have been completed at all events, then the conclusion reached that the taxbills were invalid would follow. But the argument leaves entirely out of view the qualifying provision as to time in that contract, similar to the one in the contract at bar, by which the time within which the work was to be completed was rendered indefinite, as we have seen. It is true a time within which the work was to be completed was specified in the contract, but in immediate connection therewith it was also specified that if not completed within that time, the contractor should suffer a forfeiture, not of all his pay under the contract, as would have been the case but for that provision, but only of a certain proportion thereof. The contract contemplated that the work

might not be completed within the time stated and made provision for such a contingency, and upon its happening, for an extension of such time upon terms. All that the ordinance required was that the work should be completed within a reasonable time. All that the contract required was that the work should be completed within a stated time, or in case it was not completed within that time, that certain deduction should be made from the moneys payable under the contract as therein stated. Although the contractor may not have completed the work within the time stated in the contract, yet if he completed the work within a reasonable time the ordinance was complied with and if the deductions required by the contract are made from the taxbills, the contract is complied with, and when the requirements of both ordinance and contract are fully satisfied, surely neither the city, the property-owner nor anybody else has any ground of complaint against the contractor; and in such case he would be entitled to have taxbills against the property-owner for his proportionate share of the contract price, less the amount of such deductions, and to that extent the taxbills would be good. Hence, in this case we do not think the court committed error in refusing to declare the taxbill void from the mere fact that the work may not have been completed within the specified time stated in the contract, and finding none of the errors well assigned, the judgment of the circuit court is affirmed.''

Heman v. Gilliam is cited with approval in Heman Construction Co. v. Loevy, 179 Mo. l. c. 470, in this language:

''In Heman v. Gilliam, 171 Mo. 258, it was held that delay in completing the work did not make the taxbill void, but that the property-owner was entitled to have the proportion of the penalty properly apportionable to his lot, deducted from the taxbill against the property. The defendant is not in position to

claim such a deduction in this case for two reasons, first, because he made no such demand for a deduction in the trial court, but on the contrary as shown by his tenth instruction, tried the case in that court upon the theory that the delay rendered the taxbill void; and, second, because there is no substantial evidence in the record that there was any delay whatever.''

And, again, GANTT, P. J., in Paving Co. v. Munn, 185 Mo. l. c. 569, couches his approval of the Heman case, in this language:

''But it is urged that a different conclusion was reached by this court in Heman v. Gilliam, 171 Mo. 258, and that Neill v. Gates, 152 Mo. 585, and the decisions of the Kansas City Court of Appeals on this point are not in harmony with this latest decision of this court on that question. In Heman v. Gilliam, supra, there is a clear and admirable review of all the cases above quoted on this point by Judge BRACE, and he points out that in that case the ordinance under which the work was done for which the taxbill was issued, 'did not require the work to be completed within any specified time. The ordinance is silent upon the subject and says nothing as to when the work shall be commenced or completed.' Our learned brother in that case clearly distinguishes that case from Neill v. Gates, supra; Rose v. Trestrail, 62 Mo. App. 352; McQuiddy v. Brannock, 70 Mo. App. 535; Whittemore v. Sills, 76 Mo. App. 248; Safe Deposit Co. v. James, 77 Mo. App. 616; Shoenberg v. Heyer, 91 Mo. App. 389; and Barber Asphalt Co. v. Ridge, in all of which, as in this case, an ordinance required the work should be completed in a specified time. And Springfield to use v. Davis, 80 Mo. App. 574, fell within the reasoning of those cases, because while the ordinance providing for the work did not specify the time within which it must be done, the contract did, and there was a general ordinance of the city which provided such work must be done 'within the time

agreed upon.' In Heman v. Gilliam there was no such general ordinance shown. Nowhere in Heman v. Gilliam is there the slightest criticism of Neill v. Gates, or the cases which it followed, and we see no conflict between that case and the decision in Neill v. Gates, and Barber Asphalt Co. v. Ridge, 169 Mo. 376.''

The case at bar is on all fours with the Heman case, except that we have the additional fact in this case, that there was a suspension of work directed in writing by the city engineer November 30th, which suspension was kept in force until February 20th following.

Deducting this time, the contract was actually completed in less than ninety days. The evidence as to the condition of the weather shows that the engineer acted wisely in suspending the work. There is no legal or just ground for this complaint of defendants and the point is ruled against them.

IV. Nor is the taxbill void because the contract required the contractor to observe the ''eight-hour'' ordinance of Kansas City. This ordinance fixed eight hours as a day's work. The contention is that such ordinance is unreasonable and stifled competition. The evidence shows that such work is always done at so much an hour, and for that reason it would make no special difference. But without predicating this opinion upon that question, we prefer to place it upon the broad ground that the ''eight-hour'' ordinance is a valid one, and the incorporation of its provisions in the contract proper.

Such ordinances and laws have been held constitutional and valid and the incorporation of their provisions in public contracts proper. All contracts must be made, having in view valid and subsisting laws and ordinances, and such laws and ordinances are read into them and become a part thereof, whether specifically mentioned or not. [St. Louis Quarry & Con. Co. v.

Frost, 90 Mo. App. 677; United States v. Martin, 94 U. S. 400; State v. Holden, 14 Utah 71; Com. v. Hamilton Mfg. Co., 120 Mass. 383; People v. Warren, 77 Hun 120; State v. Atkin (Kan.), 67 Pac. 519; In re Dalton, 61 Kan. 257; Treat v. People ex rel., 195 Ill. 196; Hamilton v. People ex rel., 194 Ill. 133; Givens v. People ex rel., 194 Ill. 150.]

V. The fifth contention has been disposed of in our paragraph two. We there hold that no designation of the material to be used was made within the time allowed. The sixth and seventh contentions can be considered together, and these are the "close quarters" in this case.

Section 3 of the ordinance No. 7599, the ordinance authorizing the work, is as follows:

"Section 3. The board of public works has designated the following as materials from which the resident property-owners above mentioned shall select the material with which said part of said street to be improved shall be paved, viz:

"Trinidad Lake asphalt on concrete to be laid according to detail two, of asphalt pavements, approved by said board August 11, 1896, and on file in the office of said board.

"Bermidez, California, Trinidad or any other asphalt equally as good as those designated, on concrete, to be laid according to detail D. of asphalt pavement, approved by said board October 18, 1896, and on file in the office of said board.

"American bituminous rock on concrete to be laid according to detail H. of asphalt pavement, approved by said board August 11, 1896, and on file in the office of said board.

"Vitrified brick as manufactured by the Diamond Brick & Tile Company, on concrete, to be laid according to detail G. of brick pavement, approved by said board November 25, 1895, on file in the office of said board.

"Vitrified brick, as manufactured by the Kansas City Vitrified Brick Company, the Pittsburg (Kansas) Vitrified Brick Company, or any other Vitrified brick equally as good as those designated, on concrete, to be laid according to detail one of brick pavement, approved by said board August 11, 1896, and on file in the office of said board.

"Granite or sandstone blocks, on concrete, to be laid according to detail A. of stone block pavement, approved by said board July 19, 1892, and on file in the office of said board."

The designation made by the board of public works is made in these words:

"The board designates Pittsburg (Kansas) Vitrified Brick Company's vitrified brick on concrete to be laid according to detail one of brick pavement, approved by said board August 11, 1896, and on file in the office of said board as the material with which Nineteenth street from the east line of Tracy avenue to the west line of Olive street shall be paved as a business street, as provided by ordinance No. 7599."

The contract provided:

"*Brick.* — Upon the bed of sand thus prepared there shall be laid edgewise a wearing surface of Pittsburg vitrified paving brick of uniform texture, regular in size and shape and evenly burned. The dimensions of the brick shall be not less than $2 \times 3\frac{3}{4} \times 7\frac{3}{4}$ nor greater than $3\frac{1}{2} \times 4\frac{1}{2} \times 8\frac{1}{2}$."

The contract then provides for what is known as the rattler test of bricks for paving. This is quite long and unnecessary to be inserted here. Suffice it to say that vitrified brick was being used on the streets of Kansas City, as manufactured by three competitive firms, viz: Diamond Brick & Tile Co., Kansas City Vitrified Brick Co., Pittsburg (Kansas) Vitrified Brick Co.; that all of these brick would and had stood the rattler test, provided in this contract, and were recognized

as good paving brick. That good vitrified paving brick were manufactured at points in Illinos and Iowa and perhaps at other places. It is true that the evidence of the city officials is to the effect that the brick designated by the board of public works was a trifle better than those made by the other two companies above named:

Defendants claim that the designation made by the board of public works, and incorporated in the contract, was such as encouraged monopoly, stifled and restricted bidding, and restricted competition, and that for this reason the contract was void. In this contention of defendants we concur. The case is exactly the case presented in Shoenberg v. Field, 95 Mo. App. 241. In that case, ELLISON, J., for the court, said:

"It has been a subject of much discussion in many of the courts whether, under a charter requiring a public letting to the lowest bidder, there could be a valid contract based on an ordinance requiring the use of a certain material which, on account of being patented, or held in monopoly, could only be furnished by one party. One of the points urged in behalf of the power of the city to make such contracts is that to disallow such power would cut off the use of many of the most valuable articles of material. The subject has been discussed in our Supreme Court, in Verdin v. City of St. Louis, 131 Mo. 26, and Barber Asphalt Co. v. Hunt, 100 Mo. 22. But we need not go into that question in this case. The material here specified was not a patented material or held in monopoly, and no reason existed why the restriction to material which could be furnished by but one party should have been made.

"The charter aforesaid (sec. 12, art. 17) provides: 'All city improvements of whatever kind or character, including the erection of all public buildings, made or to be erected at the expense of the city, and including all work to be paid for in special taxbills, except as in this charter otherwise provided, shall be let by con-

tract to the lowest and best bidder, and shall be pre-
scribed by ordinance; provided, however, that nothing
in this section shall be so construed as to prevent re-
pair by day's work of streets, alleys and other public
places, curbing, sewers, culverts, buildings or other city
property, so far as may be necessary, under the direc-
tion of the board of public works.'

"It has not been suggested that these provisions
shall in no case be respected.   On the contrary, it has
been held that they are to be disregarded only 'on ac-
count of their inherent inapplicability to the nature and
circumstances of the case.'   [Baird v. Mayor, 96 N. Y.
582.]   In this case there was full room for application
of such provisions.   Vitrified brick for paving pur-
poses were a common article of manufacture and sale.
The monopoly in this case was not a monopoly made
by the exceptional character of the material, or the fact
that the material was held by one party, but it was a
monopoly made and brought into existence by the
board of public works.   If this can be done in the face
of the charter, then, as said in Larned v. City of Syra-
cuse, 17 App. Div. (N. Y.) 27, bids could be restricted
to lime or cement made by one favored party, and to
rock broken or crushed by some other favored party.
Thus would all protection be withdrawn from the prop-
erty-owner and full play be given to fraud, favoritism
and corruption.''

In the recent case of Swift v. City of St. Louis, 180
Mo. l. c. 95, our Court in Banc, through GANTT, J., ap-
proved of the Shoenberg case in this language:

"We readily concede that if it had appeared that
more than one firm made coal tar cement of uniform
quality, then it would have been the bounden duty of
the board to have fixed a standard and invited compe-
tition, as was ruled in Shoenberg v. Field, 95 Mo. App.
241.   In that case it was properly ruled that when the
board of public improvements selected vitrified brick
of a certain make, when the board's own records dis-

closed that other manufacturers made brick of the approved standard, it was a denial of competition and void. In this case we find from the evidence that there was but one known manufacturer of coal tar cement of equal and uniform quality and that was made by Warren Bros. Had the evidence disclosed that other manufacturers made a coal tar cement suitable for binding the rock in the macadam we think it would have been the duty of the board to select a standard of such cement, and required bidders to conform to that standard, and provided proper tests, but where, as in this case, the whole supply is owned by one company or individual, and it is the only suitable article for the public improvement, we see no reason for denying the city the right to avail itself of it, if we are to adhere to our former decisions permitting the city to use patented articles and materials in which one party has a monopoly by the ownership of the natural supply.''

In a case originating in Kansas City, Kansas, National Surety Co. v. Kansas City Hydraulic P. B. Co., 84 Pac. 1034, where the contract called for the vitrified brick manufactured by the Diamond Brick & Tile Co., one of the three companies appearing in the evidence in this record, the Supreme Court of Kansas cites with approval the Shoenberg case, supra, and PORTER, J., for the Kansas court, says:

"The answer alleges that several other kinds of vitrified brick were made and sold in Kansas City, equal in all respects to the particular brand named in the contract. The principal item of cost in the material used for this paving was the brick. If but one particular brand or make of brick was to be used, in the very nature of things all opportunity for competition was eliminated, and favoritism, fraud, and corruption made possible and extremely probable. Indeed, fraud and favoritism were so apparently the purpose of this provision of the contract and ordinance that courts should not hesitate to condemn as illegal and

void the whole proceedings. It is urged on the other hand that Gen. St. 1901, par. 730, provides: 'In case of paving, such petition shall state the width of the paving, and a specific description of the material to be used.' This provision must be construed with the other provision which obviously intended to insure competition. To give to section 730 the construction urged would defeat the purpose of the other. We give effect to both by holding that section 730 is complied with by describing in the petition the material used, without designating a kind manufactured or furnished by but one person or company. In a petition for paving, the use of the words 'vitrified brick' of standard or some designated quality, without the mention of any particular make or brand, would certainly answer all the requirements of this section, and still leave opportunity for competition. The tendency of the courts has been to hold the entire proceedings void where opportunity for open competition is denied.''

We are not disposed to extend the doctrine of Barber Asphalt Paving Co. v. Hunt, 100 Mo. 22; Verdin v. St. Louis, 131 Mo. 26; and Swift v. St. Louis, 180 Mo. 80, further than is in those cases announced.

If we understand that doctrine, it is to the effect that, notwithstanding the city is required to have competition in the letting of contracts, yet if there is a patented article, or an article not patented, but in the hands of one person or company, which article is necessary for the public improvement, and there are no other persons having the same general character of material, which could be brought into competition, then the municipality is not forced to use other clearly inferior material, on account of the requirement for competitive bidding.

GANTT, J., so hedged the proposition in Swift v. St. Louis, supra, and in doing so approved the Shoenberg case, which is an exact counterpart of the case in hand. In the case at bar, we think that vitrified

brick, of a certain standard, is a proper designation of material, but vitrified brick, as manufactured by either A. B. or C., is not a proper designation. Vitrified brick is neither a patented article, nor is it one controlled by a single person or corporation, so as to put it upon the basis of a patented article. The evidence shows, and our experience teaches us, that vitrified brick sufficient for paving purposes are manufactured, made and furnished by a number of persons, companies or corporations. The designation of material in the ordinance, as well as the selection made by the board of public works, should have been couched in such language as would secure unhampered and unrestricted competitive bidding, and the contract should have so followed. If you can say in your specifications, that the vitrified bricks made by A. shall be used, then you can further say that lime made by B. shall be used, and sand taken from the Missouri River by C. shall be used, etc., and thus stifle competition from one end to the other. Such was not the purpose of statutory and ordinance provisions providing for a public letting to the lowest and best bidder.

But we are cited to the case of Paving Co. v. Field, 188 Mo. 182, as sustaining a different theory, and as upholding plaintiff's views of this contract. It will be noticed in that case that the vexed question of designating Trinidad Lake asphalt, was up, and Fox, J. recognizing the rule of *stare decisis,* followed, with some reluctance, the old cases therein cited. We are not of the opinion that it was in the mind of the court at that time to overrule what was said in approval of the Shoenberg case, in the case of Swift v. City of St. Louis. The language may be somewhat confusing, but we hardly think such was Judge Fox's purpose.

Under the views we take of this case the contract was void and against public policy as being one tending to further monopoly and stifle competition and that the taxbills issued thereunder are void. With these views

it follows that the judgment of the circuit court should be reversed, and judgment entered here for defendants. It is so ordered.

*Valliant, P. J.,* and *Lamm, J.,* concur; *Woodson, J.,* not sitting.