THE CLEVELAND TRINIDAD PAVING COMPANY, Respondent, v. J. McLORD et al., Appellants.

Kansas City Court of Appeals, June 28, 1910.

1. MUNICIPAL CORPORATIONS: Public Improvements: Street Paving: Monopoly: Competition. Where the charter of a city provided for open competitive bidding for street paving, an ordinance is void which provides that the paving material must be of a certain brand or manufacture when substantially the same material may be had from other persons or corporations.

2. ———: ———: ———. An article held in monopoly may be designated by a city even though it makes ineffective the provision of the charter for competitive bidding, if the same or like article cannot be had from other sources.

3. ———: ———: ———. The right of a city to designate an article for street paving held in monopoly is founded on the idea that the city should not be deprived of the use of an article which was only produced or owned by one person. But if that, or a like article is owned or produced by others, the reason ceases, and the city has no power itself to create the monopoly by selecting one to the exclusion of the others.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*Henry N. Ess* for appellants.

Section 12, art. 17, of the Kansas City charter, required competition and the ordinance prohibited it and the ordinance is void. Schoenberg v. Field, 95 Mo. App. 241; Curtice v. Schmidt, 202 Mo. 703; Swift v. St. Louis, 180 Mo. 80; Glennon v. Gates, 136 Mo. App. 421; Taylor v. Schroeder, 130 Mo. App. 483.

*Scarritt, Scarritt & Jones* and *Alfred M. Seddon* for respondent.

ELLISON, J.—Plaintiff's action is to enforce the lien of a special taxbill against defendants' property in Kansas City, Missouri. The judgment in the trial court was for the plaintiff.

The work for which the taxbill was issued consisted in paving one of the streets in Kansas City, on which defendants owned property which is now sought to be charged. The ordinance authorizing the work provided that the paving material should "consist of a genuine Venezuela Lake Asphalt (from the Inciarte Deposit, District of Maracaibo, Venezuela) pavement to conform in all respects to detail 'D' of asphalt pavements approved by the Board of Public Works," etc.

Defendants set up in their answer that: "At the time of the passage and approval of said ordinance there were in existence and in use in Kansas City various asphalts known as natural asphalts and artificial asphalts and known also as Trinidad Lake Asphalt taken from Lake Trinidad in the island of Trinidad, Trinidad Asphalt, Bermudez, California, Cuban and Mexican Asphalts, Asphalts in Cuba, Mexico, and Asphalts in Kentucky, in the Indian Territory, and in

Oklahoma and in various other localities and American Bituminous Rock Asphalt of various kinds, all of which various asphalts had been and were in use as asphalt for street paving at the time of the passage and approval of said ordinance and were equal in all respects to the Venezuela Lake Asphalt (from the Inciarte Deposit, District of Maracaibo, Venezuela) the asphalt selected in and by said ordinance aforesaid for repaving Main street from north side of Thirteenth street to the south side of Nineteenth street."

It was further alleged in the answer that section 12 of article 17 of the charter of Kansas City required street paving work to be let to the lowest and best bidder; but that the ordinance in question by providing the material as herein set out, prevented competition, and it was therefore in violation of the charter in that it cut out all other asphalt material, as above designated and alleged to be the equal in all respects of that selected.

Plaintiff's reply contained the following: "Plaintiff admits and states that at the time of the passage and approval of the said ordinance there were in existence and in use in Kansas City various asphalts known as Trinidad Lake Asphalt, which is an asphalt taken from the asphaltic lake on the island of Trinidad; Venezuela Lake Asphalt, which is an asphalt taken from the lake or deposit known as the Inciarte Deposit in the District of Maracaibo, Venezuela; Gilsonite asphalt, which is an asphalt taken from a deposit in the State of Utah; and Rock asphalt, which consists of limestone or sandstone impregnated with asphaltic oil, which is mined and taken principally from the Indian Territory and the State of Kentucky and Trinidad asphalt taken from the island of Trinidad; and that all of the said asphalts were at the time of the passage and approval of the said ordinance, or had theretofore been used in Kansas City in street pavements, but plaintiff states that each of the said asphalts differed materially in chemical constituents and physical prop-

erties and either one of the said kinds of asphalts as a constituent part of street pavements is used to better advantage by varying the specifications as to the manner of its use and the proportions of other constituent elements of the pavement of which it is made a part; all of which is and was at all such times well known to the municipal authorities of Kansas City and property owners in said city. . .

"Plaintiff states that at all the times herein referred to the said Venezuela Lake Asphalt was an article of common and ordinary merchandise in Kansas City and throughout the United States and was of no greater price than any of the other kinds of asphalt in use as aforesaid, and that the plaintiff never owned said deposit or had any interest therein, nor did it ever have a monopoly of the use thereof."

Defendants filed a demurrer to the reply, which the trial court overruled, and judgment being thereupon rendered for plaintiff, defendants appealed.

In view of the demurrer we must take the allegations of the reply to be true. That is, we must assume that the Venezuela asphalt designated by the ordinance was not the same as the other asphalts named in the answer, and that each of these asphalts differed materially from the others "in chemical constituents and physical properties." We must also further assume to be true that the Venezuela Lake Asphalt "was an article of common and ordinary merchandise in Kansas City and throughout the United States and was of no greater price than any of the other kinds of asphalt in use as aforesaid, and that plaintiff never owned the deposit or had any interest therein, nor did it ever have a monopoly of the use thereof."

It has been definitely decided that where the charter of a city (as that of Kansas City) provides that public work and material purchased for public use, shall be let to the lowest and best bidder, it means that there must be opportunity for active competition; and that

an ordinance requiring material to be purchased of some designated person, or which was manufactured by some designated person, was a violation of such salutary provision and was void. This we decided in Schoenberg v. Field, 95 Mo. App. 241; and it has been likewise several times decided by the Supreme Court. [Curtice v. Schmidt, 202 Mo. 703; Swift v. City of St. Louis, 180 Mo. 80, 95.] And by the Supreme Court of Kansas. [National Surety Co. v. Hydraulic Press Brick Co., 73 Kan. 196.] And also by the New York Court of Appeals. [Smith v. Syracuse Imp Co., 161 N. Y. 484.]

There are few provisions guarding municipal government which are so beneficial to the public and none which should be more unhesitatingly enforced. The object of such provisions is to protect the public against the ever present temptation to favoritism and corruption. Encouragement of open competition is corresponding discouragement of monopoly, the result of which is protection to the public. It is not obnoxious to such provisions that a certain material be designated so that its effect is not done to promote an unfair advantage, or to create a monopoly. If meat is desired for the inmates of a public institution, it would not be improper to designate beef; but it would be palpably wrong to add to such designation that it should be raised and fattened by a certain farmer, or killed and cured by a certain packing house, or to so describe it as to mean the same thing. Beef is an article of general merchandise found in the general markets, and therefore its designation in no way violates provisions like that in the charter in this case, and does not foster monopoly to the prejudice of the public. So granite, sandstone, vitrified brick, and so forth, are materials in general use for street paving, and it would not be objectionable for city authorities to designate either of these, as a material to be used in certain work. But it would be manifestly improper to say the stone should be taken

145 App—10

from a certain man's quarry, or the brick should be made by some favored person. [Curtice v. Schmidt, supra; Swift v. City of St. Louis, supra; Schoenberg v. Field, supra.] In the last case it was said that that would be a monopoly created by the act of the city officials in forcing it on the public.

While it is thus shown to be a well recognized rule that the charter provision requiring competition nullifies all acts of city authorities which, under one guise or another, seek to give advantage to favorites in public work, or to foster corruption and monopoly, yet there is an exception based upon the supposed necessity of the situation. That is, that where there is a patented article, or one held in monopoly, which in the eye of the authorities is of such exceptional value and superiority that it would be a public injury to be deprived of it, it may be required to be used; the courts having concluded that the lawmakers did not intend to prevent a city from securing material thus held. [Barber Asphalt Pav. Co. v. Hunt, 100 Mo. 22; Verdin v. City of St. Louis, 131 Mo. 26; Swift v. City of St. Louis, supra; Paving Co. v. Field, 188 Mo. 182.]

The foregoing statement of the law will, we think, in some degree aid an understanding of our view of the case at bar, which can be stated in a few words: If it be true as alleged (and for present purposes we must assume it is) that Venezuela Lake Asphalt, named in the ordinance, is an article of *common merchandise throughout the country,* and that it is of *no greater price than other kinds of asphalt* and is *not held in monopoly,* then, under the rules of law which we have stated, there was no violation of either the letter or the spirit of the charter providing for open competitive bidding. It does not come within the prohibitive restrictions of the charter, and therefore it is not necessary to its validity that it be placed within the exception as to articles held by patent, or in monopoly. It could be likened to the naming of anthracite coal as a fuel to

be used, or woolen as the material for clothing to be worn, in public institutions where the State, county, or municipality furnish these things; commodities of such general use as that their mere designation does not suggest monopoly or favoritism. And if it be true that the asphalt named in the ordinance is a material substantially different from other asphalts, it would come within the exception above stated and could be designated by the ordinance though held in monopoly.

It can easily be seen that notwithstanding the well-defined rules of law above stated, development of facts at a trial of a like case might make it difficult to determine. If it should be shown that Venezuela Lake Asphalt was held in monopoly, even at the source of supply, and that it was not different or better for paving than other kinds of asphalt, it could not be arbitrarily required by the city, since such requirement would be in the face of the law providing for competition. For, notwithstanding the rule above stated, permitting the designation of an article held in monopoly, such rule cannot be used to destroy the plain direction of the law requiring competition. Permission to designate an article held in monopoly is an exception, and, as already stated, is founded on a supposed necessity, in order that a city might have the use of an article not to be had from other persons. If the article can be had from other parties than those designated, it would be a violation of the law to close those sources by such designation. [Fishburn v. City of Chicago, 171 Ill. 338.] If there was but one kind of asphalt or one make of paving brick, either could be selected though held in monopoly. But if there are many kinds and makes of substantially the same material and value, one cannot be selected to the exclusion of bids on any of the others. In other words, it should not be supposed that the courts would permit the right to designate a material held in monopoly to become a subterfuge for creating a monopoly by the city authorities. The particular kind of vitrified brick

which is manufactured and owned by a certain person or corporation, would cause that make of brick to be held in monopoly, yet the city could not designate such make to the exclusion of other bricks of the same kind. [Curtice v. Smith, supra; Swift v. City of St. Louis, supra; Schoenberg v. Field, supra; Smith v. Syracuse Imp. Co., supra; National Surety Co. v. Hydraulic Press Brick Co., supra.] The statement in Field v. Barber Asphalt Pav. Co., 194 U. S. 618, that one kind of paving material might be selected by the city council notwithstanding it rendered competitive bidding impossible, should not be understood as announcing that positive law for open competition in public work was not to be heeded or enforced. It should rather be taken to be an announcement that an article held in monopoly by one person or association might be chosen by the municipality when such article could not be had from other sources.

The judgment is affirmed. All concur.